[891 NYS2d 238]

Butler Capital Corporation, Plaintiff, v Frank Cannistra, Jr., et al., Defendants.

Supreme Court, Suffolk County, October 8, 2009

## APPEARANCES OF COUNSEL

*Moritt Hock Hamroff & Horowitz, LLP*, Garden City, for plaintiff. *Frank Cannistra, Jr.*, defendant pro se.

## OPINION OF THE COURT

PETER H. MAYER, J.

It is ordered that plaintiff's application (sequence No. 001) for an order of reference in this foreclosure action is considered under CPLR 3408, as well as the related statutes and case law, and is hereby denied without prejudice and with leave to resubmit upon proper papers, for the following reasons: (1) failure to submit evidentiary proof, including an affidavit from one with personal knowledge, as to whether or not, pursuant to CPLR 3408, this action is a residential foreclosure involving a "high-cost home loan" consummated between January 1, 2003 and September 1, 2008 or a "subprime" or "non-traditional home loan" (as those terms are defined under RPAPL 1304), and whether the mortgagor defendant is known to be a resident of the property in foreclosure, as well as evidentiary proof, including an attorney's affirmation, of compliance with the requirements of CPLR 3408, if applicable, regarding mandatory settlement conferences in residential foreclosure actions; (2) failure to submit evidentiary proof, including an affidavit from one with personal knowledge, of proper compliance with the time and content requirements specified in the notice of default provisions set forth in the mortgage, and evidentiary proof of proper service of said notice; (3) failure to submit evidentiary proof, including an attorney's affirmation, of compliance with the form, type size, typeface, paper color and content requirements for foreclosure notices, pursuant to RPAPL 1303, which applies to actions commenced on or after February 1, 2007 (as amended Aug. 5, 2008), as well as an affidavit of proper service of such notice; (4) failure to submit evidentiary proof, including an attorney's affirmation, of compliance with the form, content, type size, and typeface requirements of RPAPL 1320 regarding special summonses in residential foreclosure actions, and evidentiary proof of proper service of said special summons; (5) failure to submit evidentiary proof, including an affidavit from one with personal knowledge, as to whether, pursuant to RPAPL

1302, the action involves a "high-cost home loan" or a "subprime home loan" (as such terms are defined in Banking Law §§ 6-*l* and 6-m, respectively) and, if so, evidentiary proof, including an attorney's affirmation, of compliance with the pleading requirements of RPAPL 1302 regarding high-cost and subprime home loans; (6) failure to submit evidentiary proof, including an affidavit from one with personal knowledge, as to whether, pursuant to RPAPL 1304, this action involves a "high-cost home loan" (as defined in Banking Law § 6-*l*), or a "subprime home loan" or a "non-traditional home loan" (as defined in RPAPL 1304) and, if so, evidentiary proof, including an attorney's affirmation, of compliance with the requirements of RPAPL 1304 regarding the precommencement notice required in foreclosure actions; and (7) failure of the affidavit in support to be in properly sworn form, as required by CPLR 2309 (b); and it is further ordered that, inasmuch as the plaintiff has failed to properly show that the loan in foreclosure is not a "high-cost home loan" consummated between January 1, 2003 and September 1, 2008 or a "subprime home loan" or "non-traditional home loan" as those terms are defined in RPAPL 1304, pursuant to CPLR 3408 (a), a mandatory settlement conference is hereby scheduled for December 2, 2009 before the undersigned, located at Room A-259, Part 17, One Court Street, Riverhead, New York 11901, for the purpose of holding settlement discussions pertaining to the relative rights and obligations of the parties under the mortgage loan documents, including, but not limited to, determining whether the parties can reach a mutually agreeable resolution to help the defendant avoid losing his or her home, and evaluating the potential for a resolution in which payment schedules or amounts may be modified or other workout options may be agreed to, and for whatever other purposes the court deems appropriate; and it is further ordered that, pursuant to CPLR 3408 (c), at the scheduled conference, the plaintiff shall appear in person or by counsel, and if appearing by counsel, such counsel shall be fully authorized to dispose of the case. If the defendant appears pro se, the court shall advise the defendant of the nature of the action and his or her rights and responsibilities as a defendant; and it is further ordered that the plaintiff shall promptly serve a copy of this order upon the homeowner defendant at all known addresses, via certified mail (return receipt requested) *and* by first class mail, and upon all other defendants via first class mail, and shall provide proof of such service to the court at the time of any scheduled conference, and annex a copy of this order and the affidavit(s) of service as exhibits to any motion resubmitted

pursuant to this order; and it is further ordered that with regard to any future applications by the plaintiff, if the court determines that such applications have been submitted without proper regard for the applicable statutory and case law, or without regard for the required proofs delineated herein, the court may, in its discretion, deny such applications with prejudice and/or impose sanctions pursuant to 22 NYCRR subpart 130-1, and may deny those costs and attorneys fees attendant with the filing of such future applications.

In this foreclosure action, the plaintiff filed a summons and complaint on September 8, 2008, which essentially alleges that the mortgagor defendant, Frank Cannistra, Jr., defaulted in payments with regard to a mortgage, dated September 12, 2005, in the principal amount of $120,000, for the premises located at 5 Indianwood Court, Wading River, New York. The plaintiff now seeks a default order of reference and requests amendment of the caption to reflect discontinuance against the "Doe" defendants. For the reasons set forth herein, the plaintiff's application is denied.

In July 2006, the legislature enacted the Home Equity Theft Prevention Act, which amended certain sections of New York's Banking Law, Real Property Law and Real Property Actions and Proceedings Law. From the language of the amendments, the apparent intent of the legislature in promulgating the act was to afford greater protections to homeowners in the unfortunate throes of foreclosure. For example, in amending the Real Property Law, in section 3 of the act, the legislature declared that "it is the express policy of the state to preserve and guard the precious asset of home equity, and the social as well as the economic value of homeownership." (Real Property Law § 265-a [1] [b], as added by L 2006, ch 308, § 3.) Similarly, in relevant part, section 3 of the act states that the "[t]he intent and purposes of this section are to . . . ensure, foster and encourage fair dealing in the sale and purchase of homes in foreclosure or default . . . and to preserve and protect home equity for the homeowners of this state." (Real Property Law § 265-a [1] [d], as added by L 2006, ch 308, § 3.)

As part of the recent legislation intended to protect homeowners in foreclosure, the legislature enacted Laws of 2008, chapter 472, § 3, which became effective August 5, 2008. CPLR 3408 was part of that legislation. That rule does not specifically state an effective date, nor does it specify its applicability to actions commenced on or after a date certain; however, since sec-

tion 3-a of chapter 472 deals strictly with settlement conferences for those actions commenced prior to September 1, 2008, and since September 1, 2008 is the effective date for other relevant statutes enacted or amended by Laws of 2008, chapter 472, this court finds that CPLR 3408 applies to actions commenced on or after September 1, 2008. Subdivision (a) of CPLR 3408 provides:

> "In any residential foreclosure action involving a high-cost home loan consummated between [January 1, 2003 and September 1, 2008], or a subprime or nontraditional home loan, as those terms are defined under [RPAPL 1304], in which the defendant is a resident of the property subject to foreclosure, the court *shall* hold a mandatory conference . . . for the purpose of holding settlement discussions pertaining to the relative rights and obligations of the parties under the mortgage loan documents, including, but not limited to determining whether the parties can reach a mutually agreeable resolution to help the defendant avoid losing his or her home, and evaluating the potential for a resolution in which payment schedules or amounts may be modified or other workout options may be agreed to, and for whatever other purposes the court deems appropriate" (emphasis supplied).

The meaning of the term "consummated," as used in CPLR 3408 and many other foreclosure-related statutes, is not specifically defined in any of those statutes. Therefore, the court is left to interpret its intended meaning. Generally, with regard to a business transaction, for example, the transaction is "consummated" when it is actually completed. Accordingly, with regard to a loan agreement, the date of consummation may be construed to mean the date on which a loan transaction is final, or when the loan is actually funded. In analyzing the legislation applicable to foreclosure actions, however, this court holds that, as used in the statutes relevant to foreclosures, a loan is "consummated" at the time the borrower executes the note and mortgage. Since the subject mortgage was executed between January 1, 2003 and September 1, 2008, pursuant to CPLR 3408, the court must ascertain whether or not this action involves a "high-cost home loan," a "subprime home loan" or a "non-traditional home loan" as defined by statute.

RPAPL 1304 (5) (e) defines "non-traditional home loan" as "a payment option adjustable rate mortgage or an interest only

loan consummated between [January 1, 2003] and [September 1, 2008]." The definitions of "subprime home loan" and "high-cost home loan" are much more complex. For example, RPAPL 1304 (5) (c) defines "subprime home loan" as "a home loan consummated between [January 1, 2003] and [September 1, 2008] in which the terms of the loan exceed the threshold as defined in [RPAPL 1304 (5) (d)]." Whether or not a loan satisfies one of the "thresholds," as defined in RPAPL 1304 (5) (d), depends upon whether the loan is a first lien mortgage loan or a subordinate mortgage lien, and upon various other factors, such as annual percentage rate, time of loan consummation, periods of maturity, percentage points over yield on treasury securities, and the applicable initial or introductory periods. The definition specifically

> "excludes a transaction to finance the initial construction of a dwelling, a temporary or 'bridge' loan with a term of twelve months or less, such as a loan to purchase a new dwelling where the borrower plans to sell a current dwelling within twelve months, or a home equity line of credit." (RPAPL 1304 [5] [c].)

Similarly complex, the term "high-cost home loan" is defined in Banking Law § 6-l (1) (d) as "a home loan in which the terms of the loan exceed one or more of the thresholds as defined in [Banking Law § 6-l (1) (g)]." Pursuant to Banking Law § 6-l (1) (g), whether or not a loan satisfies one of these "thresholds" likewise depends upon several factors, such as interest rates, loan types, loan amounts, loan periods, periods of maturity, annual percentage rates, percentages of total points and fees, yields on treasury securities, and bona fide loan discount points. Any combination or permutation of the "threshold" variables set forth in RPAPL 1304 (5) (d) or Banking Law § 6-l (1) (g) may cause a mortgage to meet the definition of a "subprime home loan" or a "high-cost home loan."

Based on the variables and the complexities of the parameters involved in defining these terms, as well as the less-than-complete nature of the plaintiff's submissions, the court will not (nor should it be expected to) flippantly draw its own conclusions as to whether or not the loan at issue meets the definition of a "high-cost home loan," a "subprime home loan," or a "non-traditional home loan." This is particularly true, given the legislative intent of and express protections afforded to homeowners under the statutes related to foreclosure actions.

The motion papers submitted in this matter establish that this is, indeed, a foreclosure action involving a residential mortgage loan, and that the action was initiated on or after September 1, 2008. Therefore, the court must determine whether or not the mandates of CPLR 3408 apply. The plaintiff has failed to submit proper evidentiary proof, including an affidavit from one with personal knowledge, as to whether or not the loan in foreclosure is a "high-cost home loan," a "subprime home loan," or a "non-traditional home loan," as those terms are defined in the applicable statutes.

It is not enough for a plaintiff or a plaintiff's attorney to make conclusory statements of the inapplicability of CPLR 3408 as relates to the subject loan. This court has been flooded with motions by plaintiff banks in which the plaintiff submits a letter from counsel and/or an affidavit from the plaintiff claiming that the amount of the mortgage excludes it from the foreclosure conference requirements, pursuant to RPAPL 1304 (5) (b) (i). That section essentially makes the conference requirement applicable only to those home loans in which the "principal amount of the loan at origination did not exceed the *conforming loan size* that was in existence at the time of origination for a comparable dwelling as established by the federal national mortgage association" (emphasis supplied).

Plaintiffs often contend that the subject loan exceeds the "conforming loan size," thereby precluding the matter from the CPLR 3408 conference requirement. In support of this proposition, however, plaintiffs typically ask the court to rely on a nonevidentiary exhibit entitled "Historical Conventional Loan Limits." Even if such a document were in evidentiary form, there is no evidentiary proof that such "Conventional Loan Limits" equate to the "conforming loan size" referred to in the statute. Therefore, the court will not rely on such a document to determine whether or not the subject loan should be excluded from the mandatory conference requirements of CPLR 3408.

The court, likewise, will not rely on conclusory statements by the plaintiff or plaintiff's process server that the homeowner defendant does not reside at the subject premises and, therefore, is not entitled to a settlement conference. Pursuant to RPAPL 1304 (5) (b) (iv), the definition of a particular "home loan" that may qualify for a mandatory settlement conference includes one in which the premises *"is or will be* occupied by the borrower as the borrower's principal dwelling" (emphasis supplied). Therefore, a mere statement from a process server or plaintiff's

counsel that states, for example, that the defendant resides or was served with process at an address other than the mortgaged premises, is not dispositive on the residency issue for purposes of excluding the matter from the mandatory conference requirements of CPLR 3408.

Based on the foregoing, and in keeping with the obvious homeowner-protective legislative intent of the relevant foreclosure statutes, the court errs on the side of those protections and hereby directs that a settlement conference pursuant to CPLR 3408 shall be held in accordance with this order.

Concerning default notices, when a mortgage agreement requires that, prior to acceleration of the mortgage, a lender must serve the borrower with a notice to cure a default, mere conclusory assertions from one without personal knowledge, including those contained in an attorney's affirmation, are insufficient to establish that the lender complied with such preacceleration requirements (see e.g. Norwest Bank Minn. v Sabloff, 297 AD2d 722 [2d Dept 2002]; CAB Assoc. v State of New York, 14 AD3d 639 [2d Dept 2005]). Failure of the plaintiff to submit proper proof of such compliance requires denial of the plaintiff's requested relief (id.).

For foreclosure actions commenced on or after February 1, 2007, RPAPL 1303 (1) requires that the "foreclosing party in a mortgage foreclosure action, which involves residential real property consisting of owner-occupied one-to-four-family dwellings shall provide notice to the mortgagor in accordance with the provisions of this section with regard to information and assistance about the foreclosure process." Pursuant to RPAPL 1303 (2), the

> "notice required by this section shall be delivered with the summons and complaint to commence a foreclosure action . . . [and] shall be in bold, fourteen-point type and shall be printed on colored paper that is other than the color of the summons and complaint, and the title of the notice shall be in bold, twenty-point type . . . [and] shall be on its own page."

The specific statutorily required language of the notice is set forth in RPAPL 1303 (3), which was amended on August 5, 2008 to require additional language for actions commenced on or after September 1, 2008.

Since the plaintiff's summons and complaint and notice of pendency were filed with the County Clerk on September 8,

2008, compliance with the notice provisions set forth in RPAPL 1303 is required. Plaintiff has failed to submit proper evidentiary proof, including an attorney's affirmation, upon which the court may conclude that the requirements of RPAPL 1303 (2) have been satisfied, specifically regarding the content, type size and paper color of the notice. Merely annexing a copy of a purportedly compliant notice does not provide a sufficient basis upon which the court may conclude as a matter of law that the plaintiff has complied with the substantive and procedural requirements of the statute. Plaintiff's failure to establish compliance with the notice requirements of RPAPL 1303 also requires denial of its application for an order of reference.

To provide additional protection to homeowners in foreclosure, the legislature also enacted RPAPL 1320 to require a mortgagee to provide additional notice to the mortgagor-homeowner that a foreclosure action has been commenced. In this regard, effective August 1, 2007 for foreclosure actions involving residential property containing not more than three units, RPAPL 1320 imposes a special summons requirement, in addition to the usual summons requirements. This additional notice requirement, which must be in boldface type, provides an explicit warning to defendant mortgagors that they are in danger of losing their home and having a default judgment entered against them if they fail to respond to the summons by serving an answer upon the mortgagee plaintiff's attorney and by filing an answer with the court. The notice also informs defendant homeowners that sending a payment to the mortgage company will not stop the foreclosure action, and advises them to speak to an attorney or go to the court for further information on how to answer the summons. The exact form and language of the required notice are specified in the statute. Plaintiff's failure to submit an attorney's affirmation of compliance with the special summons requirements of RPAPL 1320, and proof of proper service of the special summons, further requires denial of the plaintiff's application for an order of reference.

Also effective September 1, 2008 is RPAPL 1304, which requires that, with regard to a ''high-cost home loan,'' a ''subprime home loan'' or a ''non-traditional home loan,'' at least 90 days before a lender or mortgage loan servicer commences legal action against the borrower, including a mortgage foreclosure action, the lender or mortgage loan servicer must give the borrower a specific, statutorily prescribed notice. In es-

sence, the notice warns the borrower that he or she may lose his or her home because of the loan default, and provides information regarding assistance for homeowners who are facing financial difficulty. The specific language and type-size requirements of the notice are set forth in RPAPL 1304 (1).

Pursuant to RPAPL 1304 (2), the requisite 90-day notice must be

> "sent by the lender or mortgage loan servicer to the borrower, by registered or certified mail and also by first-class mail to the last known address of the borrower, and if different, to the residence which is the subject of the mortgage. Notice is considered given as of the date it is mailed."

The notice must also contain a list of at least five housing counseling agencies approved by the U.S. Department of Housing and Urban Development, or those designated by the Division of Housing and Community Renewal, that serve the region where the borrower resides, as well as the counseling agencies' last known addresses and telephone numbers. Pursuant to RPAPL 1304 (3), the 90-day period specified in RPAPL 1304 (1) does not apply "if the borrower has filed an application for the adjustment of debts of the borrower or an order for relief from the payment of debts, or if the borrower no longer occupies the residence as the borrower's principal dwelling." Furthermore, according to RPAPL 1304 (4), the 90-day notice and the 90-day period required by RPAPL 1304 (1) "need only be provided once in a twelve month period to the same borrower in connection with the same loan."

Since this action was commenced on or after September 1, 2008, if the subject loan being foreclosed upon qualifies as a "high-cost home loan," a "subprime home loan," or "nontraditional home loan," the precommencement notice requirements of RPAPL 1304 will apply. Accordingly, the court must ascertain whether or not the loan in foreclosure is such a loan and, if so, whether or not the plaintiff has satisfied such statutory requirements. Without an affidavit from one with personal knowledge as to whether or not this action involves one of those types of loans, as well as an attorney's affirmation of compliance with the requirements of RPAPL 1304, the court may not grant an order of reference.

Finally, CPLR 2309 (b) requires that an "oath or affirmation. . . be administered in a form calculated to awaken the conscience and impress the mind of the person taking it in ac-

cordance with his religious or ethical beliefs." Accordingly, for affidavits to have sufficient validity, a notary public witnessing signatures must take the oaths of the signatories or obtain statements from them as to the truth of the statements to which they subscribed their names (*see Matter of Helfand v Meisser*, 22 NY2d 762 [1968]; *Matter of Imre v Johnson*, 54 AD3d 427 [2d Dept 2008]; *Matter of Leahy v O'Rourke*, 307 AD2d 1008 [2d Dept 2003]). The affidavit in support submitted by the plaintiff fails to have such sufficient validity required by statute.