[923 NYS2d 609]

AURORA LOAN SERVICES, LLC, Respondent, v STEVEN WEISBLUM et al., Appellants, et al., Defendants.

Second Department, May 17, 2011

APPEARANCES OF COUNSEL

*Fred L. Seeman*, New York City (*Peter Kirwin* of counsel), for appellants.

*Knuckles, Komosinski & Elliott, LLP*, Elmsford (*Fincey John* of counsel), for respondent.

**OPINION OF THE COURT**

ANGIOLILLO, J.

In *First Natl. Bank of Chicago v Silver* (73 AD3d 162 [2010]) (hereinafter *Silver*), we held that the plaintiff in a foreclosure action has the burden of demonstrating compliance with Real Property Actions and Proceedings Law § 1303, a notice requirement of the Home Equity Theft Prevention Act (*see* Real Property Law § 265-a [hereinafter HETPA]). Proper service of RPAPL 1303 notice with the summons and complaint is a condition precedent to the commencement of the action, and noncompliance results in dismissal of the complaint. In the appeal before us, we are called upon to consider another notice pursuant to HETPA which must be served at least 90 days prior to commencement of the foreclosure action pursuant to Real Property Actions and Proceedings Law § 1304. Consistent with the rationale of *Silver*, we determine that proper service of RPAPL 1304 notice is also a condition precedent to the commencement of the action. Here, the plaintiff failed to establish compliance with RPAPL 1304, requiring dismissal of the complaint insofar as asserted against the mortgagors.

## Factual and Procedural Background

The plaintiff Aurora Loan Services, LLC (hereinafter Aurora) commenced this foreclosure action against, among others, the defendants Steven Weisblum and Patti Weisblum (hereinafter together the Weisblums) after they defaulted on a consolidated mortgage loan secured by their home in Rye Brook (hereinafter the premises).

On April 7, 2006, the Weisblums obtained a mortgage loan of $672,000 from Credit Suisse Financial Corporation (hereinafter Credit Suisse) and gave a first mortgage on the premises to Mortgage Electronic Registration Systems, Inc. (hereinafter

MERS), as nominee for Credit Suisse. After a series of assignments, the first mortgage was ultimately assigned to MERS, as nominee for Lehman Brothers Bank, FSB (hereinafter Lehman Brothers).

On December 11, 2006, the Weisblums obtained a mortgage loan of $32,000 from Lehman Brothers and gave a second mortgage on the premises to MERS, as nominee for Lehman Brothers. On the same date, the Weisblums executed a "Consolidation, Extension and Modification Agreement" (hereinafter the CEMA), whereby the first and second mortgages were consolidated into a single lien in the amount of $704,000 held by MERS, as nominee for Lehman Brothers. In the CEMA, the Weisblums are collectively defined as the "borrower," and they both signed the agreement. Annexed as an exhibit to the CEMA and expressly incorporated by reference is the consolidated note in the amount of $704,000, dated December 11, 2006. The parties to the consolidated note are Lehman Brothers, as lender, and Steven Weisblum, as borrower.

MERS, as nominee for Lehman Brothers, subsequently executed a written document purporting to assign the first note and mortgage in the amount of $672,000 to the plaintiff Aurora. The date of the assignment, January 16, 2009, is prior to the commencement of this action, but the assignment was recorded on May 6, 2009, after the commencement of this action. Aurora has produced no documents establishing an assignment to it of the second note and mortgage in the amount of $32,000, nor of the consolidated note and CEMA in the amount of $704,000.

The Default and RPAPL 1304 (90-Day) Notice

The Weisblums defaulted on the consolidated note in 2007. At that time, as the above chronology demonstrates, MERS, as nominee for Lehman Brothers, still held the consolidated note and mortgage. On May 21, 2007, Aurora, apparently acting in the capacity of debt collector, sent a letter to Steven Weisblum at the premises, informing him that the loan was in default and he had the right to cure the default.

On December 11, 2008, Aurora addressed a letter to Steven Weisblum at the premises (hereinafter the RPAPL 1304 notice). In the RPAPL 1304 notice, Aurora stated it was acting as a debt collector and informed Steven Weisblum that the loan was in default, he had the right to cure the default, and his failure to cure the default within 90 days may result in Aurora commencing a legal action against him. The RPAPL 1304 notice contained all statutorily-required language, except it did not include "a

list of at least five housing counseling agencies" with their "last known addresses and telephone numbers" (RPAPL 1304 [2]). Although reference was made to an enclosure described as "Counseling Agency List Form No. 704-3204-1008," the record does not contain such an enclosure or reflect that one was served with the notice. Nor did Aurora submit an affidavit of service establishing the content of the RPAPL 1304 notice and its enclosure, if any, or the manner in which, and to whom, the RPAPL 1304 notice was mailed.

### The Foreclosure Pleadings and RPAPL 1303 Notice

By summons and complaint dated March 27, 2009, Aurora commenced this foreclosure action, alleging its status as the "holder of a note and mortgage being foreclosed" under an assignment which has been "sent for recording" in the County Clerk's Office. Aurora further alleged it has complied with the provisions of RPAPL 1304, the Weisblums are in default, and the principal balance of $704,000 is due and owing.

Together with the summons and complaint, Aurora served a notice pursuant to RPAPL 1303 entitled "Help for Homeowners in Foreclosure," containing warnings about foreclosure rescue scams and other information. The notice included all of the statutorily-required content (see RPAPL 1303 [3]). Affidavits of service established that a process server unsuccessfully attempted to effect personal service and thereafter served the summons, complaint, and RPAPL 1303 notice upon Steven Weisblum and Patti Weisblum by affixing those papers to the door of the premises on April 6, 2009, and mailing copies to the premises by first-class mail on April 8, 2009. The process server averred that the RPAPL 1303 notice, as served, was printed on blue paper, with 20-point type for the heading and 14-point type for the body of the notice.

The Weisblums filed a verified answer dated May 4, 2009, in which they asserted affirmative defenses including Aurora's lack of standing and its failure to comply with the pleading requirements of RPAPL 1302 and the notice requirements of RPAPL 1303 and 1304.

### The Motion and Cross Motion for Summary Judgment

Aurora moved for summary judgment on the complaint and for related relief. In a supporting affidavit, a vice-president of Aurora averred that the full principal amount of the consolidated note, $704,000, was due and owing, and contended that the Weisblums' affirmative defenses were without merit. Aurora

contended that it had properly mailed the RPAPL 1304 notice to Steven Weisblum, who was the only borrower designated on the consolidated note, and properly served the RPAPL 1303 notice on both the Weisblums, as established by the affidavits of service. With respect to its standing, Aurora contended it was the holder of the subject mortgage by delivery without a written assignment and there was no obligation to record a written assignment prior to commencement of the action.

The Weisblums cross-moved for summary judgment dismissing the complaint on the grounds that Aurora failed to properly serve the notices required by RPAPL 1303 and 1304. In their supporting affidavits, Patti Weisblum averred she did not receive either the RPAPL 1303 notice or the RPAPL 1304 notice, and Steven Weisblum averred he did not receive the RPAPL 1304 notice via certified or registered mail. The Weisblums contended that the RPAPL 1303 notice printed on white paper, as shown in the exhibit to Aurora's motion papers, contravened the statutory requirement to print the notice on colored paper. With respect to RPAPL 1304 notice, the Weisblums contended that service upon Steven Weisblum was insufficient because Patti Weisblum was also identified as a "borrower" in the CEMA. Moreover, the Weisblums noted that Aurora failed to submit affidavits of service establishing compliance with the statutory requirement that the RPAPL 1304 notice be sent to both borrowers, Steven Weisblum and Patti Weisblum, by registered or certified mail and also by first-class mail.

As an additional ground for summary judgment dismissing the complaint, the Weisblums contended that Aurora did not meet the pleading requirements of RPAPL 1302 and, in effect, did not have standing to maintain this action because it could not plead or demonstrate a proper assignment to it of the CEMA and consolidated note. The Weisblums pointed to various irregularities in the purported assignment to Aurora from MERS, as nominee for Lehman Brothers, dated January 16, 2009, and contended that its recording on May 6, 2009, after this action was commenced in March 2009, rendered it invalid.

In the first order appealed from, dated February 25, 2010, the Supreme Court granted Aurora's motion and denied the cross motion, holding that the affidavits of service established proper service of RPAPL 1303 notice on blue paper, and that the Weisblums' RPAPL 1304 defense was without merit. The Supreme Court determined that, although Patti Weisblum was a "borrower" under the CEMA and entitled to RPAPL 1304 notice,

Aurora's failure to serve her with the notice was "not fatal" since the Weisblums both participated in "the mandatory settlement conference" (see CPLR 3408), and no prejudice to the Weisblums had been identified. Further, the Supreme Court found no merit to the Weisblums' contention that Aurora had failed to plead and prove that it was the holder of the CEMA simply because the assignment was not recorded prior to commencement of the action.

Shortly thereafter, Aurora moved for an order of reference and other relief. On March 23, 2010, this Court decided *Silver* (73 AD3d 162 [2010]), and the Weisblums moved pursuant to CPLR 2221 (e) (2) for leave to renew based upon a change in the law, contending that service of RPAPL 1304 notice is a condition precedent to foreclosure. Aurora responded that the Weisblums, in attending the settlement conference, had waived any failure of Aurora to comply with a condition precedent in not serving the RPAPL 1304 notice on Patti Weisblum.

In the second order appealed from, dated May 19, 2010, the Supreme Court granted leave to renew and, upon renewal, adhered to its original determination. The Supreme Court noted that this Court, in *Silver*, emphasized HETPA's purpose to afford "greater protections to homeowners confronted with foreclosure" in holding that the plaintiff's failure in that case to serve RPAPL 1303 notice required dismissal of the action. Here, by contrast, RPAPL 1303 notice was properly served. With respect to RPAPL 1304 notice, the Supreme Court determined that the great protection intended by HETPA was afforded Patti Weisblum because she "had either actual or constructive notice of RPAPL 1304 by virtue of service of [that notice] upon her husband," and she appeared in the action and attended the settlement conference.

## Analysis

### RPAPL 1303

Initially, we agree with the Supreme Court that, on the record presented, Aurora fully complied with the condition precedent of properly serving the RPAPL 1303 notice on both of the Weisblums at the commencement of this action.

Notice pursuant to RPAPL 1303 must be "delivered" with the summons and complaint in the foreclosure action (RPAPL 1303 [2]), and proper service is a condition precedent to the commencement of the action which is the plaintiff's burden to meet (see *Silver*, 73 AD3d at 169). Here, contrary to the Weis-

blums' contention, Aurora satisfied this burden with affidavits of service establishing proper service on both of the Weisblums of the RPAPL 1303 notice with the statutorily-required content, printed in the required type size on colored paper (*see* RPAPL 1303 [2], [3]; CPLR 308 [4]; *Countrywide Home Loans Servicing, LP v Albert*, 78 AD3d 983, 984-985 [2010]; *City of New York v Miller*, 72 AD3d 726 [2010]). Patti Weisblum's bare and unsubstantiated denial of receipt was insufficient to rebut the presumption of proper service created by the affidavits of service (*see Deutsche Bank Natl. Trust Co. v Hussain*, 78 AD3d 989 [2010]; *Countrywide Home Loans Servicing, LP v Albert*, 78 AD3d at 984-985; *Beneficial Homeowner Serv. Corp. v Girault*, 60 AD3d 984 [2009]).

Accordingly, Aurora satisfied this condition precedent to the commencement of the action, and the Supreme Court properly denied that branch of the Weisblums' cross motion which was to dismiss the complaint based upon alleged improper service of the RPAPL 1303 notice.

RPAPL 1304

■ In holding that compliance with RPAPL 1303 is a mandatory condition precedent to the commencement of a foreclosure action, we were persuaded by the explicit statutory requirements and mandatory language of RPAPL 1303, as well as the legislative purpose behind HETPA (*see Silver*, 73 AD3d at 165, 169). In the case before us, unlike *Silver*, the notice provision of RPAPL 1304 is at issue. The Supreme Court here determined that "actual or constructive notice" of the content of RPAPL 1304 suffices under circumstances where the borrower has not shown prejudice from the lender's failure to strictly comply with the statute. We disagree. Thus, we now make clear what is implicit in *Silver*, namely, that proper service of the RPAPL 1304 notice containing the statutorily-mandated content is a condition precedent to the commencement of the foreclosure action. The plaintiff's failure to show strict compliance requires dismissal.

We reach this determination for reasons similar to those stated in *Silver*. RPAPL 1304, like RPAPL 1303, contains specific, mandatory language in keeping with the underlying purpose of HETPA to afford greater protections to homeowners confronted with foreclosure (*see Silver*, 73 AD3d at 165). Both statutes have titles containing the word "required" (RPAPL 1304 ["Required prior notices"]; RPAPL 1303 ["Foreclosures; required notices"]). Content, timing, and service provisions of

RPAPL 1304 are very specific and couched in mandatory language. "[A]t least ninety days before a lender, an assignee or a mortgage loan servicer commences legal action against the borrower, including mortgage foreclosure, such lender, assignee or mortgage loan servicer shall give notice to the borrower in at least fourteen-point type" of certain statutory-specific information (RPAPL 1304 [1]). The notice must be prefaced with the warning, "YOU COULD LOSE YOUR HOME. PLEASE READ THE FOLLOWING NOTICE CAREFULLY," and must contain the specific language set forth in RPAPL 1304 (1), including information concerning the homeowner's right to cure a default and access to counseling agencies to obtain financial help. Indeed, as noted, the RPAPL 1304 notice must include "a list of at least five housing counseling agencies as designated by the division of housing and community renewal, that serve the region where the borrower resides" with their "last known addresses and telephone numbers" (RPAPL 1304 [2]). With regard to the manner of service, RPAPL 1304 is equally precise: "Such notice shall be sent by such lender, assignee or mortgage loan servicer to the borrower, by registered or certified mail and also by first-class mail to the last known address of the borrower, and if different, to the residence that is the subject of the mortgage . . . in a separate envelope from any other mailing or notice" (RPAPL 1304 [2]).

In its current form, RPAPL 1304 is applicable to any "home loan," as defined in subdivision (5) (a) of that section. When initially enacted, however, RPAPL 1304 applied only to "high-cost," "subprime," and "non-traditional" home loans, terms which were defined in subdivision (5) (L 2008, ch 472, § 2).* In the same bill which enacted RPAPL 1304, the Legislature amended RPAPL 1302 to provide that, in any foreclosure action involving a "high-cost" or "subprime" home loan, the complaint must contain an affirmative allegation that, at the time the action is commenced, the plaintiff has complied with RPAPL 1304 (L 2008, ch 472, § 17). Also enacted in the same bill was a new provision, CPLR 3408, requiring a mandatory settlement conference in any residential foreclosure action involving a "high-

---

* Former RPAPL 1304 (5) (c) and (d) defined "subprime home loan" as a home loan consummated between January 1, 2003 and September 1, 2008, in which, for a first lien mortgage loan, the annual percentage rate exceeded three percentage points over the yield on treasury securities, or for a subordinate mortgage lien, the annual percentage rate exceeded five percentage points over the yield on treasury securities. The parties here do not dispute that the consolidated loan at issue falls within the definition of subprime.

cost," "subprime," or "non-traditional" home loan (L 2008, ch 472, § 3). These provisions became effective with foreclosure actions commenced on or after September 1, 2008 (L 2008, ch 472, § 28).

Subsequently, RPAPL 1304 was amended, effective January 14, 2010, to take its current form, by deleting all references to high-cost, subprime, and non-traditional home loans (L 2009, ch 507, § 1-a). The pleading requirement of RPAPL 1302, however, was not amended, and continues to require the complaint in any foreclosure action "relating to a high-cost home loan or a subprime home loan" to "contain an affirmative allegation that at the time the proceeding is commenced, the plaintiff . . . has complied with . . . section thirteen hundred four of this article" (RPAPL 1302 [1] [b]). It is a defense in such an action that "the actions of the lender violate any provision of . . . section thirteen hundred four of this article" (RPAPL 1302 [2]).

The case before us was commenced in March 2009, at a time when RPAPL 1304 was applicable to "high-cost," "subprime," and "non-traditional" home loans. The parties here do not dispute that the home loan at issue is a subprime loan to which the preamendment provisions of RPAPL 1304 apply.

The parties disagree, however, regarding the proper party or parties to whom the RPAPL 1304 notice must be sent. RPAPL 1304 provides that notice must be sent to the "borrower," a term not defined in the statute. Aurora concedes that it did not send RPAPL 1304 notice to Patti Weisblum but contends she is not a "borrower" within the meaning of the statute because only Steven Weisblum is identified as a "borrower" on the consolidated note. Contrary to this contention, the Weisblums both executed the CEMA, are collectively defined therein as the "borrower" and, under that definition as "borrower," agreed to pay the amounts due under the consolidated note, which is expressly incorporated by reference in the CEMA. The CEMA also provides that the holder of the consolidated note "may enforce its rights" against each "borrower" as defined in the CEMA, and Aurora currently seeks to enforce its rights under the consolidated note and mortgage against both of the Weisblums. In light of the language in RPAPL 1304 (1) that the lender must send the notice at least 90 days before it "commences legal action against the borrower, including mortgage foreclosure," we deem the record here sufficient to establish that Patti Weisblum was a "borrower" within the meaning of the statute, entitled to receive notice 90 days prior to commencement of the action.

█ Pursuant to RPAPL 1302, Aurora's complaint contains an allegation that it has complied with RPAPL 1304. We hold that proper service of RPAPL 1304 notice on the borrower or borrowers is a condition precedent to the commencement of a foreclosure action, and the plaintiff has the burden of establishing satisfaction of this condition (see Silver, 73 AD3d at 169; RPAPL 1302 [1] [b]; Bank of Am., N.A. v Guzman, 26 Misc 3d 922, 923-924 [2009]; Butler Capital Corp. v Cannistra, 26 Misc 3d 598, 606-607 [2009]). Thus, in support of its motion for summary judgment on the complaint, Aurora was required to prove its allegation by tendering sufficient evidence demonstrating the absence of material issues as to its strict compliance with RPAPL 1304, and failure to make this showing requires denial of the motion, regardless of the opposing papers (see Alvarez v Prospect Hosp., 68 NY2d 320, 324 [1986]).

Aurora failed to meet its prima facie burden in several respects. As noted, Aurora concedes that the RPAPL 1304 notice was not sent to Patti Weisblum. Moreover, the RPAPL 1304 notice provided with Aurora's motion papers does not contain the statutorily-required list of counseling agencies. Nor did Aurora submit an affidavit of service to establish proper service on both borrowers "by registered or certified mail and also by first-class mail" to their last known address (RPAPL 1304 [2]). Therefore, the Supreme Court should have denied Aurora's motion for summary judgment on the complaint insofar as asserted against the Weisblums.

On the cross motion, the Weisblums established their prima facie entitlement to judgment as a matter of law dismissing the complaint insofar as asserted against them by relying upon this same evidence, further supported by their personal affidavits attesting that Patti Weisblum did not receive RPAPL 1304 notice and Steven Weisblum did not receive RPAPL 1304 notice by registered or certified mail. Aurora did not rebut this showing and, thus, the cross motion for summary judgment dismissing the complaint insofar as asserted against the Weisblums should have been granted on this ground.

█ In light of our determination that RPAPL 1304 notice is a mandatory condition precedent, we are not persuaded by Aurora's remaining arguments, which are based upon the alleged lack of prejudice to the Weisblums. First, Aurora contends that failure to serve RPAPL 1304 notice on Patti Weisblum was inconsequential because she likely became aware of the notice allegedly sent to her husband and, in any event, both Weis-

blums received proper RPAPL 1303 notice and appeared at the mandatory settlement conference after the commencement of the action pursuant to CPLR 3408. Aurora's contention does not address the fact that there has been no proof of proper service of RPAPL 1304 notice containing the statutorily-required content on Steven Weisblum.

Moreover, Aurora's contention does not address the statutory purpose of the preforeclosure notice afforded by RPAPL 1304. The content of the RPAPL 1304 notice furthers the legislative declaration in HETPA of "the express policy of the state to preserve and guard the precious asset of home equity" (Real Property Law § 265-a [1] [b]), and the legislative intent "to provide a homeowner with information necessary . . . to preserve and protect home equity" (Real Property Law § 265-a [1] [d]). Since RPAPL 1304 notice must be sent at least 90 days prior to the commencement of an anticipated foreclosure action, its manifest purpose is to aid the homeowner in an attempt to avoid litigation. The legislative history noted a typical lack of communication between distressed homeowners and their lenders prior to the commencement of litigation, leading to needless foreclosure proceedings. The bill sponsor sought "to bridge that communication gap in order to facilitate a resolution that avoids foreclosure" by providing a preforeclosure notice advising the borrower of "housing counseling services available in the borrower's area" and an "additional period of time . . . to work on a resolution" (Senate Introducer Mem in Support, Bill Jacket, L 2008, ch 472, at 10). Accordingly, Aurora's subsequent compliance with RPAPL 1303 upon the commencement of the action, and with CPLR 3408 after the commencement of the action, does not address the purpose of RPAPL 1304.

Second, Aurora likens the failure to give RPAPL 1304 notice to "a mistake, omission, defect or irregularity" in the proceedings which the Supreme Court may "disregard[ ]" in its discretion "if a substantial right of a party is not prejudiced" (CPLR 2001). Where, as here, the condition sought to be disregarded is a mandatory condition precedent, the plaintiff's failure to comply cannot be disregarded. We are mindful that, prior to our ruling in *Silver*, at least one court invoked CPLR 2001 to overlook a minor irregularity in a properly served RPAPL 1303 notice, which failed to contain certain language in an amendment to the statute which became effective two days prior to service of the notice (*see Trustco Bank v Alexander*, 23 Misc 3d 1129[A], 2009 NY Slip Op 50996[U] [2009]). We distinguished that case

on the facts where no RPAPL 1303 notice at all was served (*see Silver*, 73 AD3d at 167). Here, Aurora's substantial failure to comply with RPAPL 1304 cannot be deemed a minor irregularity which can be overlooked. While clearly this is a case which does not warrant invocation of the court's discretionary authority pursuant to CPLR 2001, we decline to express an opinion when, if ever, a defect or irregularity in the content of an RPAPL 1304 notice might be so minimal as to warrant the exercise of the court's discretion under CPLR 2001 to avoid dismissal of the action.

Accordingly, Aurora's motion for summary judgment on the complaint should have been denied, and the Weisblums' cross motion for summary judgment dismissing the complaint insofar as asserted against them should have been granted on the ground that Aurora failed to comply with RPAPL 1304.

Standing

Further in support of their cross motion, the Weisblums contested Aurora's standing to commence this action. Although the failure to serve RPAPL 1304 notice is sufficient reason in itself to grant their cross motion and dismiss the complaint, we address the standing issue in light of the possibility that the action may be recommenced after Aurora effects proper service of RPAPL 1304 notice.

In order to commence a foreclosure action, the plaintiff must have a legal or equitable interest in the mortgage (*see Wells Fargo Bank, N.A. v Marchione*, 69 AD3d 204, 207 [2009]). A plaintiff has standing where it is both (1) the holder or assignee of the subject mortgage and (2) the holder or assignee of the underlying note, either by physical delivery or execution of a written assignment prior to the commencement of the action with the filing of the complaint (*see Wells Fargo Bank, N.A. v Marchione*, 69 AD3d at 207-209; *U.S. Bank, N.A. v Collymore*, 68 AD3d 752, 754 [2009]). Thus, as long as the plaintiff can establish its lawful status as assignee, either by written assignment or physical delivery, prior to the filing of the complaint, the recording of a written assignment after the commencement of the action does not defeat standing (*see U.S. Bank, N.A. v Collymore*, 68 AD3d at 754). We find that Aurora has failed to make this showing.

Here, the note and mortgage at issue were originally comprised of a first and second note and mortgage, which were consolidated into a single note in the amount of $704,000 and the single lien reflected in the CEMA. The document submitted

by Aurora in support of its motion for summary judgment and in opposition to the Weisblums' cross motion purports to be an assignment of only the first note and mortgage in the amount of $672,000 to Aurora by MERS, as nominee for Lehman Brothers. However, Aurora failed to produce evidence of MERS' authority to assign the first note. On its motion for summary judgment, Aurora failed to provide a copy of the first note but submitted a copy of the original first mortgage and a series of assignments culminating in the purported assignment of the first note and mortgage to Aurora. The first mortgage was originally held by MERS, as nominee for Credit Suisse; the mortgage document recites that the lender on the first note is Credit Suisse, but there is nothing in this document to establish the authority of MERS to assign the first note. MERS later assigned the first mortgage "together with" the underlying note, and thereafter, successive assignees assigned the first mortgage "together with" the underlying note. While, in some circumstances, the assignment of a note may effect the transfer of the mortgage as an inseparable incident of the debt (*see U.S. Bank, N.A. v Collymore*, 68 AD3d at 754), here the assignment instruments purport to do the opposite, without any evidence that MERS initially physically possessed the note or had the authority from the lender to assign it (*see LPP Mtge. Ltd. v Sabine Props., LLC*, 2010 NY Slip Op 32367[U] [2010]; *OneWest Bank, F.S.B. v Drayton*, 29 Misc 3d 1021, 1038-1041 [2010]; *Bank of N.Y. v Alderazi*, 28 Misc 3d 376 [2010]; *cf. Mortgage Elec. Registration Sys., Inc. v Coakley*, 41 AD3d 674, 674-675 [2007]).

Moreover, Aurora produced no documents indicating an assignment to it of the second note and mortgage or of the entire consolidated note and CEMA in the amount of $704,000. Although Aurora's vice-president averred in conclusory fashion that Aurora became holder of the mortgage which is the subject of the action "by delivery without a written assignment," the affiant failed to give any factual detail of a physical delivery of both the consolidated note and the CEMA to Aurora prior to the commencement of the action. Thus, Aurora failed to establish its standing to commence the action.

Accordingly, the appeal from the order dated February 25, 2010 is dismissed, as that order was superseded by the order dated May 19, 2010, made upon renewal. The order dated May 19, 2010 is reversed insofar as appealed from, on the law and, upon renewal, the order dated February 25, 2010 is vacated, the plaintiff's motions for summary judgment on the complaint and

for an order of reference are denied, and the Weisblums' cross motion for summary judgment dismissing the complaint insofar as asserted against them is granted.

DILLON, J.P., BELEN and ROMAN, JJ., concur.

Ordered that the appeal from the order dated February 25, 2010 is dismissed, as that order was superseded by the order dated May 19, 2010, made upon renewal; and it is further,

Ordered that the order dated May 19, 2010 is reversed insofar as appealed from, on the law, and, upon renewal, the order dated February 25, 2010 is vacated, the plaintiff's motions for summary judgment on the complaint and for an order of reference are denied, and the cross motion of the defendants Steven Weisblum and Patti Weisblum for summary judgment dismissing the complaint insofar as asserted against them is granted; and it is further,

Ordered that one bill of costs is awarded to the defendants Steven Weisblum and Patti Weisblum.