16-4012-bk
*Michael H. Arnold v. First Citizens National Bank et al.*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 19th day of July, two thousand seventeen.

Present:
   JOHN M. WALKER, JR.,
   DEBRA ANN LIVINGSTON,
   GERARD E. LYNCH,
    *Circuit Judges*.

_____

MICHAEL H. ARNOLD, as Chapter 11 Trustee,

   *Plaintiff-Appellant*,

   v.          16-4012-bk

FIRST CITIZENS NATIONAL BANK, THE COMMUNITY PRESERVATION CORPORATION, ELMIRA SAVINGS BANK,

   *Defendants-Appellees*.

_____

For Plaintiff-Appellant:   GREGORY MASCITTI (Christina L. Shifton, on the brief), LeClairRyan, P.C., Rochester, NY

For Defendant-Appellee First Citizens: ALLAN HILL (Nickolas Karavolas, on the brief), Phillips Lytle LLP, Rochester, NY

For Defendant-Appellee Community Preservation Corporation: RONALD M. TERENZI (Cara M. Goldstein, on the brief), Stagg, Terenzi, Confusione & Wabnik, LLP, Garden City, NY

For Defendant-Appellee Elmira Savings: DAVID D. MACKNIGHT, Lacy Katzen LLP, Rochester, NY

Appeal from a judgment of the United States District Court for the Western District of New York (Geraci, *C.J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

Plaintiff-appellant Michael H. Arnold, the bankruptcy trustee (the "Trustee") for debtor Cornerstone Homes, Inc. ("Cornerstone"), appeals from the November 11, 2016 judgment of the United States District Court for the Western District of New York (Geraci, *C.J.*) which, in turn, affirmed a grant of summary judgment to defendants-appellees First Citizens National Bank ("First Citizens"), The Community Preservation Corporation ("CPC"), and Elmira Savings Bank ("Elmira", collectively, the "Banks") by the bankruptcy court. We assume the parties' familiarity with the underlying facts, the procedural history of the case, and the issues on appeal.

Over the course of its life as an ongoing concern, Cornerstone developed a large portfolio of residential real estate properties in southern New York, mostly in economically depressed communities in the region. At the time the bankruptcy petition in this case was filed, Cornerstone owned more than seven hundred parcels of residential real estate, which, together, were valued at more than $18,000,000. In order to build its holdings, Cornerstone initially solicited investment from hundreds of individual investors. These individual investors (the "Individual Lenders") lent Cornerstone funds to purchase and renovate properties in the region in exchange for a promissory note (the "Individual Notes"), secured by a mortgage (an "Individual Mortgage") on one of Cornerstone's residential properties. These loans were relatively small –

2

often on the order of $40,000 – and the rates relatively high, with interest on the Individual Notes generally accruing at ten percent per year.

In 2006 and 2007, Cornerstone sought to refinance these loans at substantially lower interest rates and, to this end, turned to several banks, First Citizens, CPC, and First Niagara Bank ("First Niagara"), for funding.[1]   Each of the Banks entered into separate loan agreements with Cornerstone (the "Bank Loans").   In connection with these agreements, the Banks lent Cornerstone the specified sum, and, in return, Cornerstone separately granted each Bank a mortgage on certain properties in Cornerstone's portfolio (the "Bank Mortgages").   In an apparent effort to avoid New York's mortgage recordation tax, the parties also asked the Individual Lenders to execute a written agreement assigning his or her Individual Mortgage and the associated note to the Bank lending money against the underlying property.   The individual security interests putatively transferred by these assignments were consolidated by agreements between each of the Banks and Cornerstone, each of which separately secured a Bank Loan. Under the assignments, each Individual Lender agreed to convey "unto [the assignee Bank] . . . a certain mortgage made by Cornerstone . . . together with the bond or obligation described in said mortgage."   App'x 946.   It remains uncontested on appeal that, as the Bankruptcy Court observed, the Individual Lenders "neither indorsed the underlying promissory notes nor delivered physical possession of their Individual . . . Notes to the" Banks.   *In re Cornerstone Homes, Inc.*, 544 B.R. 492, 497-98 (Bankr. W.D.N.Y. 2015).

After Cornerstone filed for bankruptcy protection, the Trustee sued the Banks, seeking a declaratory judgment that the Bank Mortgages were unenforceable as a matter of law.   It argued that, because the Individual Notes were negotiable notes covered by Article 3 of New York's

---

[1] Elmira, the third defendant-appellant here, would later purchase the loan it currently holds from First Niagara.

Uniform Commercial Code (the "UCC"), the Banks had standing under New York law to enforce the Bank Mortgages only if the written assignments executed by the Individual Lenders validly conveyed title to the Individual Notes under Article 3. It further argued that, because Article 3 does not provide for the transfer of title to a negotiable note by written assignment, the assignments at issue only effected the transfer of the Individual Mortgages, not the Individual Notes. Since it is "the note, and not the mortgage, [which] is the dispositive instrument that conveys standing to foreclose under New York law," *Aurora Loan Servs., LLC v. Taylor*, 25 N.Y.3d 355, 361 (2015), the Trustee argues that, because the Banks never gained title to the Individual Notes, the Banks have no standing to foreclose and thus cannot enforce the security interest reflected in the Bank Mortgages against property of the debtor.

In general, Article 3 of the UCC provides for two ways to gain title to a negotiable instrument: transfer and negotiation. *See* N.Y. U.C.C. §§ 3-201 (transfer); 3-202 (negotiation). Negotiation, which confers holder status on the transferee, is accomplished by physical delivery and indorsement (if the instrument is payable to order) or by delivery alone (if it is payable to bearer or is "indorsed in blank"). *Id.* §§ 3-202(1); 1-201(b)(21)(B). The UCC also permits the transfer of a negotiable instrument, which "vests in the transferee such rights as the transferor has therein." N.Y. U.C.C. § 3-201(1). However, New York's version of the UCC does not clearly define the mechanism for a valid "transfer," and the parties join issue on whether a written assignment without physical delivery of the instrument can effect a valid transfer of the instrument under Article 3. Though there are numerous New York decisions that suggest, in passing, that the recipient of a written assignment who has not taken physical delivery has, at the very least, standing to foreclose, *see, e.g.*, *Aurora Loan Servs., LLC v. Weisblum*, 85 A.D.3d 95, 108 (2d Dep't 2011) ("A plaintiff has standing where it is both (1) the holder or assignee of the

4

subject mortgage and (2) the holder or assignee of the underlying note, *either* by physical delivery *or* execution of a written assignment prior to the commencement of the action with the filing of the complaint.") (emphasis added), the parties have not pointed us to New York case law articulating a clear basis for this view or otherwise generally considering the interaction between negotiable instruments law and the law governing the prerequisites for standing to foreclose.[2]   We need not address the issue ourselves here, however, as doing so is ultimately unnecessary to our resolution of this case.

As described above, rather than proceeding through purchases of the Individual Notes from the Individual Lenders by the Banks, the Bank Loans were structured as loans from each Bank, respectively, to Cornerstone.   This is directly memorialized in the loan agreements between Cornerstone and the Banks, several of which include a clear promise to pay running from Cornerstone to the applicable Bank, and make no mention of the Individual Notes.   But it is also the way the Trustee itself characterized the loan transactions before the bankruptcy court on summary judgment.   For instance, with respect to First Citizens, the Trustee explained that "[u]pon the closing of the [First Citizens] Loan, First Citizens loaned $1,000,000.00 to [Cornerstone] pursuant to the terms of that certain promissory note issued by [Cornerstone] to First Citizens . . . and that certain mortgage issued by [Cornerstone] to First Citizens . . . ." App'x 632.

The fact that the parties also obtained written assignments of the Individual Mortgages, which they subsequently consolidated by agreement therefore does not affect, on the facts of this

---

[2]  We note, however, that the Banks have pointed us to two Appellate Division decisions which appear to have clearly held that written assignment, even absent physical delivery, is sufficient to confer standing to foreclose.   *See Wells Fargo Bank, N.A. v. Walker*, 141 A.D.3d 986, 988 (3d Dep't 2016) (holding that, though, "plaintiff's proof falls short of establishing standing by physical delivery" the assignment of the mortgage "together with the bond or note" was sufficient for standing); *U.S. Bank Nat'l Ass'n v. Akande*, 136 A.D.3d 887, 890 (2d Dep't 2016) (explaining that the written assignment in the case was sufficient to establish standing even absent physical delivery of the note).

case, the Banks' standing to foreclose. While these consolidation agreements might have been effective in minimizing the total mortgage recordation tax burden borne by the parties, they do not change the fundamental structure of the Bank Loans, or the fact that Cornerstone granted the Banks a mortgage securing these loans. Because the loans made by the Banks are independently sufficient to support the security interest at issue in this case, the Banks have standing under New York law to foreclose. *Citimortgage, Inc. v. Chow Ming Tung*, 126 A.D.3d 841, 842 (2d Dep't 2015) ("In an action to foreclose a mortgage, the plaintiff has standing where, at the time the action is commenced, it is the holder or assignee of both the subject mortgage and the underlying note."); *see also Bank of N.Y. v. Silverberg*, 86 A.D.3d 274, 280 (2d Dep't 2011) (explaining that "foreclosure of a mortgage can[] be pursued by one who has . . . [a] demonstrated right to the debt").

\*     \*     \*

We have considered the Trustee's remaining arguments and find them to be without merit. Accordingly, we **AFFIRM** the judgment of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk

6