[3 NYS3d 909]

650 Brooklyn LLC, Plaintiff, v Eva Hunte et al., Defendants.

Supreme Court, Kings County, February 5, 2015

886

---

### APPEARANCES OF COUNSEL

*Kilpatrick Townsend*, New York City (*Keith M. Brandofino* of counsel), for plaintiff.

*Robert E. Brown, P.C.*, Staten Island (*Robert E. Brown* of counsel), for Eva Hunte and another, defendants.

### OPINION OF THE COURT

CAROLYN E. DEMAREST, J.

In this action by plaintiff 650 Brooklyn LLC to foreclose a mortgage on "mixed use" real property, plaintiff moves, under motion sequence number one, for an order: (1) pursuant to CPLR 3212, granting it summary judgment in its favor on its complaint, and dismissing the answer and counterclaims of defendants Eva Hunte and Steve Hunte (collectively, defendants) dated November 20, 2013; (2) granting it a default judgment against the remaining defendants; (3) dismissing its complaint as against defendants "John Doe No. 1" to "John Doe No. 10" as each is an unnecessary party to this foreclosure action; and (4) appointing a referee to ascertain and compute the amount of damages due to it. Defendants cross-move, under motion sequence number two, for an order: (1) dismissing plaintiff's complaint based upon the ground that plaintiff failed to serve an acceleration notice on them and that plaintiff lacks standing; (2) dismissing plaintiff's complaint based upon the ground that plaintiff failed to comply with Real Property Actions and Proceedings Law § 1303; and (3) denying plaintiff's motion for summary judgment and to appoint a referee.

### Background

On December 8, 2003, Greenpoint Mortgage Funding, Inc. made a loan to Eva Hunte in the original principal amount of $227,500. This loan was evidenced by a consolidation, modification and extension agreement (the consolidation agreement), dated December 8, 2003, which was executed by Eva in favor

of Greenpoint Mortgage, and was recorded in the Office of the City Register for the City of New York on February 17, 2004. The consolidation agreement was modified by a modification to promissory note dated March 27, 2009.

The consolidation agreement, by its terms, amended, restated, and modified two notes to form a single indebtedness in the original principal amount of $227,500. These notes consisted of: (1) a prior note dated August 27, 1997 in the original principal amount of $117,000, which had been executed by Eva in favor of Greenpoint Bank (note A), and on which, at the time of the execution of the consolidation agreement, there was an outstanding principal amount of $82,518.11; and (2) a new note dated December 8, 2003 in the original principal amount of $144,981.89, which was then executed by Eva in favor of Greenpoint Mortgage (note B).

The consolidation agreement also amended, restated, and modified two mortgages to form a single lien on property owned by both Eva and Steve Hunte, which is located at 1998 Nostrand Avenue, in Brooklyn, New York (the property). The property is a three-story "mixed use" building that is not occupied by defendants (since they both reside at 4428 Kings Highway, in Brooklyn, New York), comprised of two apartments and a store.[1] The mortgages consisted of: a prior mortgage dated August 27, 1997 in the original principal amount of $117,000, which had been executed by Eva in favor of Greenpoint Bank (mortgage A), and was recorded on October 23, 1997, and a new mortgage dated December 8, 2003 in the original principal amount of $144,981.89, which was then executed by Eva in favor of Greenpoint Mortgage (mortgage B), and was recorded on February 17, 2004.

As further collateral to secure payment pursuant to the consolidation agreement, Eva executed an assignment of lessor's interest in lease(s) dated December 8, 2003 (the ALIL), in favor of Greenpoint Mortgage, which was recorded on February 17, 2004. The modification to promissory note executed March 27, 2009, by Eva, provided that the note dated December 8, 2003 had a balance due of $205,188.39 as of March 27, 2009 and that past due principal and interest would be deferred to the end of Eva's loan and would extend her maturity date to April 1, 2029. It stated that all terms and provisions of the

---

**1.** Although the mortgage describes the property as a two-family dwelling with a "store," according to the defendants, the commercial space is used as a church.

note and all other documents securing or evidencing obligations due under the note were ratified and confirmed. By executing the modification on March 27, 2009, Eva represented and warranted that she had no defense, offset, compensation, or counterclaim with respect to the note.[2]

An allonge to note A, dated June 22, 2012, was executed by Douglas Bottner, as vice-president of Greenpoint Mortgage, as successor by merger with Greenpoint Bank. Pursuant to this allonge, Greenpoint Mortgage, as successor by merger with Greenpoint Bank, as assignor, assigned and endorsed over to plaintiff, as assignee, note A. It set forth that the original of note A was being attached thereto and made a part thereof and that note A was endorsed as follows: "pay to the order of [plaintiff] . . . without recourse, representation or warranty of any kind," and provided that this endorsement would "have the same effect as though it were written directly on the Note." An allonge to note B, dated June 22, 2012, was also executed by Bottner, as vice-president of Greenpoint Mortgage. Pursuant to this allonge, Greenpoint Mortgage, as assignor, assigned and endorsed over to plaintiff, as assignee, note B. It similarly set forth that the original of note B was being attached thereto and made a part thereof and that note B was endorsed as follows: "pay to the order of [plaintiff] . . . without recourse, representation or warranty of any kind," and provided that this endorsement would "have the same effect as though it were written directly on the Note."

An assignment of mortgage, dated June 22, 2012 and recorded in the Register's Office on October 19, 2012, provided that Greenpoint Mortgage, as assignor, assigned to plaintiff, as assignee, its interest in and to mortgage A, mortgage B, and the consolidation agreement. The assignment of mortgage was executed by Bottner, as vice-president of Greenpoint Mortgage. Bottner's signature on the assignment of mortgage was

---

**2.** The modification to promissory note of December 8, 2003, is upon the letterhead of Capital One, not Greenpoint, and erroneously states that the note was "with Capital One." However, the note of December 8, 2003 is payable to Greenpoint Mortgage Funding, Inc. The affidavit of Douglas Bottner, a vice-president of Greenpoint Mortgage Funding, Inc. at the time the December 8, 2003 loan was made, attests to the fact that Greenpoint was the lender and further explains that, effective December 1, 2008, Capital One became the servicer for Greenpoint, which is the reason for the Capital One letterhead on the modification of March 27, 2009. Mr. Bottner represents he is currently employed by a subsidiary of Capital One and has personal knowledge of the events at issue and the books and records of Greenpoint.

acknowledged by a notary public on June 15, 2012, whereas the assignment of mortgage stated that it was executed "as of June 22, 2012," which was the same date as the execution of the allonges. An assignment of lessor's interest in lease(s) (the assignment of the ALIL), dated June 22, 2012, and executed by Bottner, as vice-president of Greenpoint Mortgage, also provided that Greenpoint Mortgage assigned and transferred to plaintiff its interest in and to the ALIL.

Eva failed to make the required payments due under the loan documents commencing on October 13, 2012 and continuing thereafter. As a result, plaintiff, asserting that it is the current holder of the consolidation agreement, note A, note B, mortgage A, and mortgage B, based upon the assignments of the notes by the allonges and the assignment of mortgage, accelerated the amount due under the loan by letter dated July 11, 2013, entitled notice of acceleration. The notice of acceleration was executed by Kristie Blankenship, the asset manager of Situs Holdings, LLC, as an agent and special servicer for plaintiff. The notice of acceleration informed Eva that Greenpoint Mortgage had assigned all of its right, title, and interest in and to the note, security instrument, and all other documents evidencing, securing, or executed in connection with the indebtedness owed under the note to plaintiff, and that Situs had been appointed as special servicer by and for plaintiff. The notice of acceleration further stated that Eva was thereby being provided with formal notice that she was in default of her obligations for failure to make debt service payments for the months of November 1, 2012 through July 11, 2013, and that, due to her failure to make these payments when due, plaintiff was accelerating the maturity date under the loan documents and all such monetary obligations were then immediately due and owing to plaintiff in full.

Since Eva did not make the required payments, this foreclosure action was commenced by the filing of a summons and complaint dated August 9, 2013. Plaintiff filed a notice of pendency on August 29, 2013. On or about September 17, 2013, a notice of appearance and waiver in foreclosure was served for the City of New York defendants. Following three stipulations extending defendants' time to answer, moving defendants interposed an answer dated November 20, 2013, which generally denied the facts and allegations of plaintiff's complaint, and asserted 14 affirmative defenses and four counterclaims. Plaintiff also now asserts that the "John Doe No. 1" to "John

Doe No. 10" defendants are unnecessary parties, and seeks to dismiss this action as against them.

On February 3, 2014, plaintiff e-filed the instant motion for summary judgment in its favor. On February 18, 2014, defendants e-filed their instant cross motion to dismiss plaintiff's complaint.

In support of its motion, plaintiff provided copies of the allonges, the assignment of mortgage, note A, note B, mortgage A, mortgage B, the consolidation agreement, the ALIL, and the assignment of the ALIL. In addition, plaintiff submitted the affidavit of George Wisniewski, a senior managing director of Situs, who, as noted above, services the loan for plaintiff, asserting that Eva defaulted on her obligations under the loan documents by failing to make the necessary payments due thereunder commencing on October 13, 2012, that she failed to cure this default despite the demand made in the July 11, 2013 notice of default and that, based upon the acceleration of the debt, as of December 1, 2013, Eva was indebted to plaintiff in the total amount of $218,620.02, which includes $183,130.12 as the unpaid principal balance, plus additional charges consisting of interest at the note rate, interest at the default rate, late fees, advance/fees, deferred interest, and a collateral release fee.

Defendants, in opposition to plaintiff's motion and in support of their cross motion, contend that plaintiff failed to provide sufficient documentation regarding its standing to bring this action. Specifically, defendants asserted that Wisniewski's affidavit failed to allege that plaintiff was the holder of the notes at the time this action was commenced, and that he only attested that plaintiff was "currently the holder" of the notes and other loan documents. Defendants further contended that while the notes were indorsed in 2012 (by the allonges dated June 22, 2012) by Greenpoint Mortgage, Greenpoint Mortgage ceased to exist in 2007, five years before the indorsements, citing a news article from Bloomberg.com dated August 20, 2007. Defendants maintained that since Greenpoint Mortgage no longer existed on June 22, 2012, the date of the indorsements, it lacked the capacity to make these indorsements. They further asserted that Bottner, who executed the notes as Greenpoint Mortgage's vice-president in 2012, never worked for Greenpoint Mortgage, relying upon Bottner's employment history as recited on LinkedIn. Defendants contended that plaintiff had not demonstrated that it has standing due to the

irregularities in the indorsements, coupled with the lack of sworn proof by affidavit of delivery of the allonges prior to the commencement of this action. Defendants also argue that plaintiff failed to serve an acceleration notice or comply with the RPAPL 1303 notice provision to tenants.

In reply, plaintiff submitted an affidavit by Wisniewski, in which he specifically sets forth that he has personal knowledge based upon his review of the books and records of plaintiff and Situs in his possession or subject to his control and that from June 22, 2012 through the present and inclusive of August 2013, when plaintiff commenced this action, plaintiff was and continues to be the holder of the loan documents, and, therefore, has standing to bring this foreclosure action. In response to defendants' assertion that Greenpoint Mortgage no longer exists, plaintiff submitted entity information from the New York State Department of State, Division of Corporations, which states that Greenpoint Mortgage's current entity status as a domestic business corporation is "active." However, based upon the absence of proof regarding Bottner's authority to execute the allonges on behalf of Greenpoint Mortgage, the court permitted plaintiff to supplement its documentation following oral argument, to which the defendant would be entitled to respond. In its supplemental submissions, Bottner, in a sworn affidavit, attests that he was, in fact, a vice-president of Greenpoint Mortgage, the original lender that made the loan to Eva on December 8, 2003. He states that he is currently serving as vice-president of Capital One Taxi Medallion Finance, a trade name of Capital One Equipment Finance Corp., which, in turn, is a subsidiary of Capital One, N.A. He asserts that he has made this affidavit based on his personal knowledge and upon the books and records of Greenpoint Mortgage in his possession or subject to his control, and attests, in his affidavit, that by the allonge to note A dated June 22, 2012, Greenpoint Mortgage assigned its rights, title, and interest in and to note A to plaintiff, and by the allonge to note B dated June 22, 2012, Greenpoint Mortgage assigned its rights, title, and interest in and to note B to plaintiff.

Bottner, in explaining Capital One's relationship with Greenpoint Mortgage, sets forth that, effective December 1, 2008, Capital One and Greenpoint Mortgage entered into a servicing agreement, whereby Greenpoint Mortgage appointed Capital One as its servicer to service its portfolio of loans, which included the consolidation agreement, and that, by the terms

of the servicing agreement, Greenpoint Mortgage did not transfer ownership of the loans in its portfolio, which included the consolidation agreement, to Capital One, but, instead, authorized Capital One to act on its behalf as a mortgage servicer. He attests that Greenpoint Mortgage remains an active corporation in good standing, incorporated under the laws of New York, and was, in fact, an active corporation in good standing when it assigned the consolidation agreement to plaintiff on June 22, 2012.

Plaintiff has further submitted a unanimous action by written consent of the board of directors of Greenpoint Mortgage, effective as of February 11, 2009, stating that in the ordinary course of its business, Greenpoint Mortgage services mortgage loans and, where necessary, is required to initiate foreclosure proceedings on defaulted loans, and since such foreclosures may be effected more efficiently if certain of its employees, who manage such activity, are authorized to execute documents on its behalf, it resolved that each vice-president (among other officers) was thereby authorized and empowered to execute all documents purporting to effect an interest in real estate in Greenpoint Mortgage's name. Greenpoint Mortgage's unanimous written consent of the board of directors in lieu of meeting dated July 2, 2010 appointed Bottner as vice-president of Greenpoint Mortgage. Thus, Bottner, as a vice-president of Greenpoint Mortgage appointed by the 2010 unanimous consent, became authorized to execute documents on behalf of Greenpoint Mortgage pursuant to the 2009 unanimous consent. In July 2014, the moving defendants submitted a supplemental reply affirmation, addressing these additional submissions by plaintiff.

## Discussion

Defendants argue that plaintiff failed to provide them with the requisite acceleration notice and that this mandates dismissal of its complaint. While defendants concede that they received the acceleration notice, they assert that it was not sent by plaintiff, as the lender, but by its servicer, Situs. Relying upon the case of *Manufacturers & Traders Trust Co. v Korngold* (162 Misc 2d 669, 670-671 [Sup Ct, Rockland County 1994]), defendants contend that by having an agent serve the acceleration notice, plaintiff was precluded from accelerating the mortgage.

■ Defendants' reliance upon *Manufacturers & Traders Trust Co.* (162 Misc 2d 669) is misplaced. In *Manufacturers & Trad-*

*ers Trust Co.* (162 Misc 2d at 670), paragraph 19 of the mortgage therein unambiguously provided that the mortgagee may require immediate payment in full "only if all of the following conditions are met," and an "enumerated precedent condition [wa]s that the 'Lender' send a 30-day notice of default," thereby precluding the acceleration of the mortgage without such notice. The Supreme Court, Rockland County, in *Manufacturers & Traders Trust Co.* (162 Misc 2d at 671), therefore, held that since the notice of default sent by the lender's agent therein not only failed to include any proof of its agency, but, in fact, even failed to mention the plaintiff lender, an issue of fact precluding summary judgment was raised as to whether the plaintiff lender had ever notified the defendant mortgagors therein that its agent had full authority to act as its agent, or whether circumstances were such that the defendants acquired such knowledge by other means.

Here, in contrast, the consolidation agreement, the mortgages, and the notes did not provide that plaintiff was required to give notice of the default or notice of the acceleration, but, rather, stated that at the option of the mortgagee, the debt would become immediately due and payable upon the occurrence of an event of default. Specifically, the consolidation agreement provided, in paragraph 32, and mortgage A provided, in paragraph 32, that "[t]he Debt shall become due, at the option of the Mortgagee . . . after default in the payment of any installment of principal or interest as provided in the Note." Note A similarly set forth, in paragraph 5, that "[t]he whole of the Principal Sum . . . and of any other sums of money secured by the Mortgage shall, forthwith or thereafter, at the option of the Bank, become due and payable if default be made in any payment under this Note." Note B likewise set forth, in paragraph 5, that "[t]he entire principal sum together with accrued interest thereon shall become due and payable at the option of the Bank upon any default hereunder." Mortgage B also provided, in paragraph 4, that "the whole of said principal sum and interest shall become due at the option of the Mortgagee: after default in the payment of any installment of principal or of interest for fifteen days."

It is well established that while an election to accelerate must be exercised affirmatively by some overt act, exercise of the option to accelerate the maturity of a mortgage is not dependent upon a notice of default or a demand for payment of any defaulted installment unless the mortgage, by its terms,

requires otherwise (*see Charter One Bank, FSB v Leone*, 45 AD3d 958, 958 [3d Dept 2007]). Where, as here, a mortgage contains an acceleration clause in statutory form (*see* Real Property Law § 258 [schedule N] ["(t)hat the whole of said principal sum and interest shall become due at the option of the mortgagee: after default in the payment of any installment of principal or of interest for .......... days"]) or similar language, neither notice of default nor a demand for payment is required as a condition precedent to declaring the entire amount due and the commencement of a foreclosure action since the plaintiff's act of commencing the action and the filing of a notice of pendency constitutes a valid election to accelerate the maturity of the unpaid principal balance and accrued interest (*see Albertina Realty Co. v Rosbro Realty Corp.*, 258 NY 472, 476 [1932]; *Wells Fargo Bank, N.A. v Burke*, 94 AD3d 980, 983 [2d Dept 2012]; *Charter One Bank, FSB*, 45 AD3d at 958; *Clayton Natl. v Guldi*, 307 AD2d 982, 982 [2d Dept 2003]; *Hudson City Sav. Inst. v Burton*, 88 AD2d 728, 729 [3d Dept 1982]). Thus, since, here, there is no provision or condition in the mortgages, notes, or consolidation agreement that notice must accompany and manifest the mortgagee's election to accelerate, plaintiff was not required to notify defendants in order to regard the entire principal as due, as a condition of the making of such election.

■ In their cross motion and in opposition to plaintiff's motion, defendants contend that plaintiff's failure to comply with RPAPL 1303 mandates dismissal of the complaint. In their answer, the defendants' thirteenth affirmative defense alleges that "[p]laintiff failed to comply with RPAPL 1303 and 1304 Notice Requirements." RPAPL 1303 (1) provides that "[t]he foreclosing party in a mortgage foreclosure action, involving residential real property shall provide notice to: (a) any mortgagor if the action relates to an owner-occupied one-to-four family dwelling; and (b) any tenant of a dwelling unit in accordance with the provisions of this section." It is undisputed that the subject property is a mixed use property, consisting of a church and two apartments, is not owner-occupied, and was acquired by defendants as an investment for business or commercial purposes. Defendants point to the definition of "residential real property" in RPAPL 1305, which specifically relates to "Notice to tenants," and provides that

> " '[r]esidential real property' shall mean real property located in this state improved by any building

or structure that is or may be used, in whole or in part, as the home or residence of one or more persons, and shall include any building or structure used for both residential and commercial purposes" (RPAPL 1305 [1] [a]).

Defendants assert that the property has residential tenants who were not served with the required RPAPL 1303 notice, and have submitted the affidavit of Carlos Rubion, who states that he is one of the tenants of the property and that he has never received a notice about a foreclosure action concerning the property from plaintiff. Plaintiff does not contest the defendants' claim that the plaintiff did not send the tenants notice pursuant to RPAPL 1303. Rather, plaintiff argues that it did not name any of the tenants as defendants, or serve them with the complaint, and, "as a result, Plaintiff did not trigger the notice requirements of RPAPL § 1303." This conclusion is rejected.

> "In *First Natl. Bank of Chicago v Silver* (73 AD3d 162 [(2d Dept) 2010]) . . . , [the Appellate Division, Second Department] held that the plaintiff in a foreclosure action has the burden of demonstrating compliance with Real Property Actions and Proceedings Law § 1303, a notice requirement of the Home Equity Theft Prevention Act (*see* Real Property Law § 265-a . . . ) [(with respect to the notice to be served upon the mortgagor of an owner-occupied one-to-four family dwelling).][3] Proper service of RPAPL 1303 notice with the summons and complaint is a condition precedent to the commencement of the action, and noncompliance results in dismissal of the complaint" (*Aurora Loan Servs., LLC v Weisblum*, 85 AD3d 95, 98 [2d Dept 2011]; *see also WMC Mtge. Corp. v Thompson*, 24 Misc 3d 738, 739 [Sup Ct, Kings County 2009]; *Wells Fargo Bank, N.A. v Barrett*, 33 Misc 3d 1207[A], 2011 NY Slip Op 51805[U] [Sup Ct, Queens County 2011]).

In this case, the alleged noncompliance relates to RPAPL 1303 (1) (b) which, by its terms, requires service of the specified no-

---

**3.** As the *First Natl.* decision addressed RPAPL 1303 prior to the statute's amendment in 2009, which created paragraphs (1) (a) and (b), RPAPL 1303 (1) (a) was not cited in that decision. However, RPAPL 1303 (1) (a) refers to service on the mortgagor of an owner-occupied one-to-four family dwelling which is the same requirement found in RPAPL 1303 (1) prior to its amendment. The earlier statute contained no provision for service upon tenants.

tice on "any tenant of a dwelling unit" without regard to the size or occupancy of the dwelling (*compare* RPAPL 1303 [1] [a] *with* [b]). Defendants' argument that the notice provision of RPAPL 1303 (1) (b) does not apply to the instant action because the tenants are not named as defendants in the action, and have not been served with process, is unsupported by case law or the plain language of the statute. Unlike RPAPL 1303 (1) (a), which relates to service upon the mortgagor, the notice to tenants need not be served with a summons and complaint, but must be "delivered" within 10 days of the service of the summons and complaint (*compare* RPAPL 1303 [2] *with* [4]). There is no requirement that tenants be made party to the action.

The Sponsor's Memorandum, submitted in support of the modification of RPAPL 1303 in 2009, specifically noted the purpose of the modification was to "establish protections for tenants residing in foreclosed properties" as the law previously did "not require notice to tenants at the time of service of a summons and complaint on the mortgagor in a foreclosure action" (Mem in Support of L 2009, ch 507, 2009 McKinney's Session Laws of NY at 1839, 1842). The Sponsor's Memorandum recites, as the justification for the modification, that

> "20% of all foreclosure filings across the country were in *non-owner occupied properties*. . . . Often, renters have been unaware that their landlords are in default until utilities are shut off or an eviction notice appears on their door. . . . This [notice] provision will allow tenants to be fully aware of the status of the property and allow them to make informed decisions about whether they should remain in such property" (Mem in Support of L 2009, ch 507, 2009 McKinney's Session Laws of NY at 1844 [emphasis added]).

The failure to enforce the statute as written, consistent with prior determinations that compliance is a condition precedent to maintenance of the foreclosure action, would defeat the purpose of the legislation, to protect tenants who might not be otherwise aware of their rights or even of the pendency of the action. As the foreclosing party has the burden of showing compliance with the RPAPL 1303 notice provisions, and has acknowledged its failure to comply, this action must be dismissed (*see First Natl. Bank,* 73 AD3d at 165-166; *Aurora,*

85 AD3d at 98).[4] Defendants' cross motion is granted and the plaintiff's motion is denied.

As the cross motion to dismiss must be granted pursuant to RPAPL 1303 (1) (b), the remaining issues need not be addressed.[5]

## Conclusion

Accordingly, plaintiff's motion for summary judgment is denied. Defendants' cross motion to dismiss is granted.

---

**4.** This court is aware of the Second Department, Appellate Division's holding in *Mendel Group, Inc. v Prince* (114 AD3d 732 [2d Dept 2014]), but finds the case inapposite to the matter at bar. While the Second Department affirmed the finding of summary judgment for the plaintiff in *Mendel*, despite defendant's defense of lack of service pursuant to RPAPL 1303, that decision does not reference any allegation of lack of notice upon the non-mortgagor tenants and specifically notes that the defendant argued "that she resided at one of the five mortgaged properties," suggesting that the notice at issue was that required to be served upon the mortgagor (*Mendel Group*, 114 AD3d at 733). Accordingly, this decision appears to address RPAPL 1303 (1) (a), rather than RPAPL 1303 (1) (b).

**5.** As the commencement of a new action will be necessary to foreclose upon the property, it will be incumbent upon plaintiff at that time to demonstrate standing at the commencement of that action. Accordingly, an analysis of plaintiff's standing at the commencement of *this* action would be irrelevant.