Wells Fargo Bank, N.A. v Yapkowitz (2021 NY Slip Op 05139)





Wells Fargo Bank, N.A. v Yapkowitz


2021 NY Slip Op 05139


Decided on September 29, 2021


Appellate Division, Second Department


Wooten, J., J.



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on September 29, 2021
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

MARK C. DILLON, J.P.
SYLVIA O. HINDS-RADIX
BETSY BARROS
PAUL WOOTEN, JJ.


2019-00133
2019-00134
2019-00135
2019-00136
 (Index No. 33182/13)

[*1]Wells Fargo Bank, N.A., etc., appellant,
v
Fred J. Yapkowitz, et al., respondents, et al., defendants.



APPEALS by the plaintiff, in an action to foreclose a mortgage, from (1) an order of the Supreme Court (Gerald E. Loehr, J.), dated September 26, 2017, and entered in Rockland County, (2) a decision of the same court (Paul I. Marx, J.) dated May 21, 2018, (3) an order of the same court (Paul I. Marx, J.) dated July 23, 2018, and (4) a judgment of the same court (Paul I. Marx, J.) dated July 23, 2018. The order dated September 26, 2017, insofar as appealed from, denied those branches of the plaintiff's motion which were for summary judgment on the complaint and for an order of reference. The decision, after a nonjury trial, determined that the plaintiff failed to comply with RPAPL 1304. The order dated July 23, 2018, denied the plaintiff's motion pursuant to CPLR 4404(b) to set aside the decision. The judgment, upon the decision, is in favor of the defendants Fred J. Yapkowitz and Elaine M. Yapkowitz and against the plaintiff dismissing the complaint insofar as asserted against them.



McCalla Raymer Leibert Pierce, LLC, New York, NY (Daniel LoPresti of counsel), for appellant.
Becker Law Firm, PLLC, New City, NY (Steven H. Becker of counsel), for respondents.



WOOTEN, J.


OPINION & ORDER
This appeal presents an issue of first impression before this Court as to whether a plaintiff in a foreclosure action may satisfy the requirements of RPAPL 1304 by mailing a 90-day notice jointly addressed to two or more borrowers. We hold that this practice is insufficient to satisfy the requirements of RPAPL 1304, and that the plaintiff is required to mail a 90-day notice addressed to each borrower in separate envelopes as a condition precedent to commencing the foreclosure action.
I. Background
On May 6, 2005, the married defendants Fred J. Yapkowitz and Elaine M. Yapkowitz (hereinafter together the defendants) borrowed the sum of $532,000 from Argent Mortgage Company, LLC (hereinafter Argent), which was secured by a mortgage encumbering their real property in Pomona. The loan was memorialized by a note which was signed by each of the defendants as "Borrower."
On or about January 1, 2009, the defendants defaulted on their payment obligations. [*2]On January 22, 2009, Wilshire Credit Corporation (hereinafter Wilshire), the loan servicer at that time, mailed separate 30-day notices of default to each of the defendants. The 30-day notices advised each of the defendants that they were obligated to pay the sum of $6,189.30 by February 26, 2009, and that the failure to make payment by that date could result in acceleration of the entire indebtedness of the loan and the commencement of a foreclosure action.
In a letter dated February 26, 2010, jointly addressed to the defendants, Bank of America Home Loans notified the defendants that servicing of the loan was transferred from Wilshire to BAC Home Loans Servicing, LP (hereinafter BAC). The defendants were subsequently notified that servicing of the loan was transferred from BAC to Bank of America, N.A. (hereinafter BANA). Thereafter, the defendants were notified that servicing of the loan was transferred from BANA to Nationstar Mortgage, LLC (hereinafter Nationstar).
In April 2013, Argent assigned the mortgage to the plaintiff. Thereafter, the plaintiff commenced this foreclosure action against, among others, the defendants. In their answer, the defendants asserted affirmative defenses, including that the plaintiff failed to comply with the requirements of RPAPL 1304.
In June 2017, the plaintiff moved, inter alia, for summary judgment on the complaint. In support of the motion, the plaintiff submitted, among other things, a copy of a 90-day notice pursuant to RPAPL 1304 sent by BANA via certified and first-class mail to the defendants' address, and a certified mail receipt for the 90-day notice signed for by "F. Yapkowitz." The 90-day notice was jointly addressed to both of the defendants.
The plaintiff also submitted an affidavit from Edward Hyne, a litigation resolution analyst for Nationstar. Hyne averred, inter alia, that Nationstar's business records, which incorporated the records of the prior loan servicer, BANA, reflected that "90-day pre-foreclosure notices . . . were sent, via certified and first class mail, to Defendants," that "each 90-Day Notice was sent in a separate envelope from any other mailing," and that "F. Yapkowitz" "signed for and accepted the delivery of the . . . 90-Day Notice." Hyne also indicated that "each 90-Day Notice listed in the upper left-hand corner the name of the recipients (the Borrowers), the recipient's address . . . and the specific Mortgage Loan number."
In opposition to the plaintiff's motion, the defendants submitted, inter alia, an affidavit from both of them, wherein they averred, in pertinent part, that "[n]either of us remembers receiving and reading any 90-day notice of default," or "whether the 90-day notice . . . addressed to both of us, . . . and signed for by Fred [Yapkowitz,] . . . was ever shown to Elaine [Yapkowitz]." The defendants' attorney argued, among other things, that the plaintiff failed to establish its strict compliance with RPAPL 1304, a condition precedent to the commencement of the foreclosure action, since the 90-day notice submitted by the plaintiff was addressed to both defendants jointly, and the plaintiff only presented a certified mail receipt signed by "F. Yapkowitz." Thus, the defendants' attorney asserted that apparently "only one 90-day notice was mailed, rather than single notices addressed to each of the defendants individually and in separate envelopes, as required by RPAPL 1304."
In an order dated September 26, 2017, the Supreme Court denied the plaintiff's motion. The court determined that the plaintiff failed to establish its prima facie entitlement to judgment as a matter of law by relying on the affidavit of Hyne, who had no personal knowledge of the mailing of the 90-day notice, and relied on inadmissible hearsay.
At a pretrial conference on February 7, 2018, the parties stipulated to the submission of papers in lieu of testimony on the issue of, inter alia, whether the plaintiff complied with RPAPL 1304. Thereafter, the plaintiff submitted, among other things, an affidavit from Jamie Turner, assistant vice president of BANA, the former loan servicer. Turner averred, inter alia, that BANA's business records reflected that "BANA sent 90-day pre-foreclosure notices . . . via certified and first class mail to Defendants . . . in accordance with BANA's established and routinely followed business practices and procedures designed to ensure that documents are properly addressed and mailed," and that the 90-day notice was signed for by "F. Yapkowitz." Turner added that "each 90-Day Notice listed in the upper left-hand corner the names of the recipients (Defendants), the recipients' mailing address . . . and the specific Mortgage Loan number."
In a decision dated May 21, 2018, made after the submission of papers, the Supreme Court determined, inter alia, that "Turner possesse[d] the requisite knowledge of BANA's standard office practices and procedures to attest that BANA properly sent the 1304 Notice and . . . substantiate[d] the mailing with documentary proof" (Wells Fargo Bank, N.A. v Yapkowitz, 59 Misc [*3]3d 1227[A], 2018 NY Slip Op 50726[U], *7 [Sup Ct, Rockland County]). Nevertheless, the court determined that the plaintiff failed to establish its strict compliance with RPAPL 1304, which "requires a separate notice to each borrower in a separate envelope" (Wells Fargo Bank, N.A. v Yapkowitz, 59 Misc 3d 1227[A], 2018 NY Slip Op 50726[U], *8), and thus, the foreclosure action must be dismissed. The court rejected the plaintiff's contention that it could be presumed that Fred J. Yapkowitz informed his wife, Elaine M. Yapkowitz, of his receipt of the RPAPL 1304 notice, since the lender cannot "shift[ ] its responsibility to provide the 1304 Notice to both borrowers from itself . . . [to] the borrower who signed for the certified mailing or opened the first-class mailing" (Wells Fargo Bank, N.A. v Yapkowitz, 59 Misc 3d 1227[A], 2018 NY Slip Op 50726[U], *8).
Thereafter, the plaintiff moved pursuant to CPLR 4404(b) to set aside the decision. In an order dated July 23, 2018, the Supreme Court denied the plaintiff's motion.
In a judgment dated July 23, 2018, upon the decision, the Supreme Court dismissed the complaint insofar as asserted against the defendants based upon the plaintiff's failure to establish its strict compliance with RPAPL 1304.
The plaintiff appeals from (1) the order dated September 26, 2017; (2) the decision dated May 21, 2018; (3) the order dated July 23, 2018; and (4) the judgment dated July 23, 2018.
The appeal from the decision must be dismissed, as no appeal lies from a decision (see Schicchi v J.A. Green Const. Corp., 100 AD2d 509). The appeals from the orders dated September 26, 2017, and July 23, 2018, also must be dismissed because the right of direct appeal therefrom terminated with the entry of the judgment in the action (see Matter of Aho, 39 NY2d 241, 248). The issues raised on the appeals from those orders are brought up for review and have been considered on the appeal from the judgment (see CPLR 5501[a][1]).
II. Discussion
A. Overview of RPAPL 1304
An RPAPL 1304 notice is a notice pursuant to the Home Equity Theft Prevention Act (Real Property Law § 265-a), "the underlying purpose of which is 'to afford greater protections to homeowners confronted with foreclosure'" (Bank of N.Y. Mellon v Forman, 176 AD3d 663, 665, quoting Aurora Loan Servs., LLC v Weisblum, 85 AD3d 95, 103). "RPAPL 1304 was added to the Real Property Actions and Proceedings Law in 2008 as part of the legislative response to the subprime lending crisis and the epidemic of foreclosures" (Sparta GP Holding Reo Corp. v Lynch, 186 AD3d 894, 895; see L 2008, ch 472, § 2). "RPAPL 1304 requires that at least 90 days before a lender, an assignee, or a mortgage loan servicer commences an action to foreclose the mortgage on a home loan as defined in the statute, such lender, assignee, or mortgage loan servicer must give notice to the borrower" (Bank of N.Y. Mellon v Porfert, 187 AD3d 1110, 1111-1112). "Since RPAPL 1304 notice must be sent at least 90 days prior to the commencement of an anticipated foreclosure action, its manifest purpose is to aid the homeowner in an attempt to avoid litigation" (Aurora Loan Servs., LLC v Weisblum, 85 AD3d at 107). Further, "[t]he legislative history noted a typical lack of communication between distressed homeowners and their lenders prior to the commencement of litigation" (id.), and "[t]he bill sponsor sought 'to bridge that communication gap in order to facilitate a resolution that avoids foreclosure' by providing [the] preforeclosure notice . . . and an 'additional period of time . . . to work on a resolution'" (id., quoting Senate Introducer's Mem in Support, Bill Jacket, L 2008, ch 472 at 10).
"'Strict compliance with RPAPL 1304 notice to the borrower or borrowers is a condition precedent to the commencement of a foreclosure action'" (Bank of N.Y. Mellon v Porfert, 187 AD3d at 1112, quoting Citibank, N.A. v Conti-Scheurer, 172 AD3d 17, 20), "'and the plaintiff has the burden of establishing satisfaction of this condition'" (Bank of N.Y. Mellon v Porfert, 187 AD3d at 1112, quoting Aurora Loan Servs., LLC v Weisblum, 85 AD3d at 106). The statute requires, inter alia, that (1) the 90-day notice be sent by registered or certified mail, and also by first-class mail, to both (a) "the last known address of the borrower" and (b) "the residence that is the subject of the mortgage"; and that (2) "[t]he notices required by this section" be sent "in a separate envelope from any other mailing or notice" (RPAPL 1304[2]). "By requiring the lender or mortgage loan servicer to send the RPAPL 1304 notice by registered or certified mail and also by first-class mail, the Legislature implicitly provided the means for the plaintiff to demonstrate its compliance with the statute, i.e., by submission of proof of mailing by the post office" (Wells Fargo Bank, N.A. v Trupia, 150 AD3d 1049, 1050).
B. Case Law Analyzing Whether RPAPL 1304 Requires Separate Mailings to Each Borrower
In Aurora Loan Servs., LLC v Weisblum (85 AD3d 95), this Court addressed the issue of whether each of the married borrowers was entitled to a 90-day notice pursuant to RPAPL 1304. In that case, the plaintiff addressed the 90-day notice to only one of the two individuals who agreed to pay the amounts due under a consolidated note. This Court determined that since each of those individuals was a "borrower" (Aurora Loan Servs., LLC v Weisblum, 85 AD3d at 105 [internal quotation marks omitted]), each was "entitled to receive notice 90 days prior to commencement of the action" (id. at 105). While the plaintiff in Weisblum argued that the failure to serve a 90-day notice on one of the borrowers was "inconsequential because she likely became aware of the notice allegedly sent to her husband and, in any event, both [of the borrowers] . . . appeared at [a] mandatory settlement conference after the commencement of the action" (id. at 106-107), this Court rejected that contention, holding that the purpose of RPAPL 1304 was to provide notice to the borrowers prior to the commencement of the foreclosure action "in an attempt to avoid litigation" (Aurora Loan Servs., LLC v Weisblum, 85 AD3d at 107). Moreover, this Court determined that the failure to send a RPAPL 1304 notice to each of the borrowers was not a "minor irregularity" (Aurora Loan Servs., LLC v Weisblum, 85 AD3d at 107) that could be disregarded in the absence of prejudice, but rather "the condition sought to be disregarded [by the plaintiff] is a mandatory condition precedent" (id.).
While it is apparent from this Court's decision in Weisblum that each borrower is entitled to be sent notice at least 90 days prior to the commencement of the foreclosure action pursuant to RPAPL 1304, neither this Court nor any appellate court in New York has determined whether each borrower is entitled to receive an individually addressed 90-day notice in a separate envelope from a 90-day notice sent to the other borrower(s). Further, while this issue has been addressed by the Supreme Court in several decisions, there is some disagreement among those decisions as to whether RPAPL 1304 requires a separate 90-day notice to be mailed to each borrower.
In U.S. Bank Natl. Assn. v Diaz (2018 NY Slip Op 30436[U] [Sup Ct, Queens County]), the plaintiff's submissions indicated that only one 90-day notice, addressed to both of the defendant borrowers, was mailed to them. The Supreme Court determined that such notice was insufficient to establish "proper service of the RPAPL 1304 notice on each of the borrowers" (id. at *4).
Similarly, in Deutsche Bank Natl. Trust Co. v Jimenez (62 Misc 3d 811, 812 [Sup Ct, Suffolk County]), the Supreme Court determined that a single "joint notice" sent to two borrowers was insufficient to satisfy the requirements of RPAPL 1304 . In that case, the Supreme Court noted that RPAPL 1304(1) was amended to add a plural reference to "borrowers" with respect to the commencement of a foreclosure action, whereas RPAPL 1304(2) continued to refer to a "borrower" in the singular with respect to mailing requirements, reflecting a recognition that "there is often more than one borrower/defendant" (Deutsche Bank Natl. Trust Co. v Jimenez, 62 Misc 3d at 828), but that "each borrower" (id.) must individually receive the RPAPL 1304 notice.
Further, in HSBC Bank, USA N.A. v Patricola (62 Misc 3d 1209[A], 2019 NY Slip Op 50076[U] [Sup Ct, Suffolk County]), the Supreme Court again determined that each borrower is entitled to a separate RPAPL 1304 notice, since it would be improper for the court to essentially rewrite the statute to substitute "borrowers" in the plural for "borrower" in the singular under RPAPL 1304(2).
Likewise, in HSBC Bank USA v Hoffman (2019 WL 7559637, *5, 2019 NY Misc LEXIS 6193, *13 [Sup Ct, Westchester County]), the Supreme Court reiterated the principle that "not mailing notices to individual borrowers violates the mailing requirements of RPAPL § 1304."
However, in Hudson City Sav. Bank, FSB v D'Ancona (2017 NY Slip Op 31917[U], *9 [Sup Ct, Suffolk County]), the Supreme Court determined that the mere fact that 90-day notices "were addressed to both borrowers" in a single mailing "does not violate the requirements of [RPAPL 1304]" (id. at *9), since the mailing was signed for by one of the borrowers and "the post office does not require two signatures to serve such documents" (id.).
Similarly, in HSBC Bank USA, N.A. v Schneider (2020 NY Slip Op 30182[U] [Sup Ct, Suffolk County]), the Supreme Court, while determining that the plaintiff failed to establish, prima facie, its mailing of a RPAPL 1304 notice, stated in dicta that there was no basis to find "the notice is facially defective just because [the borrowers] are listed jointly as addressees" (HSBC Bank USA, N.A. v Schneider, 2020 NY Slip Op 30182[U], *3).
C. Necessity for Separate Mailings of RPAPL 1304 Notices to Each [*4]Borrower
We hold that the mailing of a 90-day notice jointly addressed to two or more borrowers in a single envelope is not sufficient to satisfy the requirements of RPAPL 1304, and that the plaintiff must separately mail a 90-day notice to each borrower as a condition precedent to commencing the foreclosure action.
RPAPL 1304(1) provides that giving "notice to the borrower" (emphasis added), in the singular, at least 90 days prior to the commencement of the foreclosure action, is a prerequisite to commencement of the action "against the borrower, or borrowers" (id. [emphasis added]). By contrast, RPAPL 1304(2), which sets forth the mailing requirements for the 90-day notice, contains no reference to "borrowers" in the plural. RPAPL 1304(2) requires the 90-day notice to be sent by registered or certified mail, and also by first-class mail, to both (1) "the last known address of the borrower" and (2) "the residence that is the subject of the mortgage" (id.). Further, RPAPL 1304(2) provides that "[t]he notices required by this section shall be sent . . . in a separate envelope from any other mailing or notice." While mailing a notice jointly addressed to multiple borrowers at the property which is the subject of the mortgage would clearly be sufficient to satisfy the requirement of sending the 90-day notice to "the residence that is the subject of the mortgage" (id.), such mailing would not also satisfy the separate requirement under RPAPL 1304(2) to mail "[t]he notices required by this section . . . to the last known address of the borrower" (and to mail each such notice in a separate envelope from any other required notice). Had the Legislature intended the mailing of a notice jointly addressed to two or more borrowers to satisfy the requirements of RPAPL 1304(2), it would have stated, as it did in RPAPL 1304(1) with regard to the commencement of a foreclosure action, that the 90-day notice must be mailed to "the last known address of the borrower or borrowers."
The problematic circumstances which might arise if the Legislature had drafted RPAPL 1304(2) to permit a mailing to "the last known address of the borrower or borrowers" are not difficult to envision. Ideally, when one of the borrowers receives a 90-day notice jointly addressed to two or more borrowers, he or she will inform the other borrower(s). However, this ideal scenario clearly will not always occur, and even a matter as urgently pressing as the receipt of a 90-day notice of foreclosure proceedings might not be communicated if, for instance, there is a breakdown of communication between the borrowers. In Aurora Loan Servs., LLC v Weisblum (85 AD3d 95), this Court addressed this issue, rejecting the plaintiff's claim that a failure to serve a RPAPL 1304 notice on one of the borrowers was inconsequential due to the likelihood she became aware of the notice sent to her husband (see Aurora Loan Servs., LLC v Weisblum, 85 AD3d at 106-107). Since the purpose of RPAPL 1304 is to take measures aimed at ensuring notice to the borrowers of an impending foreclosure action "in an attempt to avoid litigation" (see Aurora Loan Servs., LLC v Weisblum,85 AD3d at 107), it would subvert the legislative purpose of the statute to shift the burden of providing notice to each borrower from the lender or mortgage loan servicer to one of the borrowers who happens to sign for the envelope.
Of course, RPAPL 1304(2) does not require actual notice to a borrower, or to each of multiple borrowers, insofar as "[n]otice is considered given as of the date it is mailed." Nevertheless, the mailing requirements of RPAPL 1304(2) were enacted "[t]o assure . . . that the transmitted notice is actually received" (Mark C. Dillon, Unsettled Times Make Well-Settled Law: Recent Developments in New York State's Residential Mortgage Foreclosure Statutes and Case Law, 76 Alb L Rev 1085, 1111 [2012-2013] [footnote omitted]) with the added value of "provid[ing] the lender with documentary evidence that the delivery requirements of the statute were met" (id. at 1111). Since the Legislature imposed strict mailing requirements aimed at ensuring notice and documenting the delivery of the 90-day notice, it would be difficult to imagine why the Legislature would not also require the simple measure of separately addressing a 90-day notice to each of the borrowers. Moreover, while "[n]otice is considered given as of the date it is mailed" (RPAPL 1304[2]), that provision cannot be complied with unless and until each notice "required by this section" (id.) has been sent "in a separate envelope from any other mailing or notice" (id.). Thus, notice cannot be deemed given until the date of mailing, in a separate envelope, of each 90-day "notice to the borrower" (id. § 1304[1]), which we read to mean notice to each borrower.
Furthermore, insofar as strict compliance with RPAPL 1304 is a condition precedent to the commencement of a foreclosure action (see Bank of N.Y. Mellon v Porfert, 187 AD3d at 1112), the obligation to send all required notices "in a separate envelope from any other mailing or [*5]notice" cannot be satisfied by including the required notice for each borrower in the same envelope (RPAPL 1304[2]). To permit a single notice jointly addressed to two or more borrowers and mailed in a single envelope to serve in lieu of a separately mailed notice to each borrower would transform the requisite standard of compliance from "strict compliance" to "substantial compliance."
D. The Plaintiff's Failure to Comply with RPAPL 1304
Here, while 30-day notices of default were separately mailed to each of the defendants, the 90-day notice, which was sent via certified and first-class mail, was jointly addressed to the defendants. While the record reflects that "F. Yapkowitz" signed for and accepted delivery of the 90-day notice sent via certified mail, receipt of the notice is inconsequential. Even assuming, arguendo, that both of the defendants had signed for and accepted delivery of the 90-day notice, the plaintiff would not have demonstrated strict compliance with the requirements of RPAPL 1304 by mailing a notice jointly addressed to both of the borrowers in the same envelope. Since it is undisputed that the 90-day notice to each of the borrowers was sent in the same envelope, the plaintiff failed to establish its compliance with RPAPL 1304, a condition precedent to the commencement of the action.
Accordingly, the Supreme Court properly denied the plaintiff's motion, inter alia, for summary judgment on the complaint and properly dismissed the complaint insofar as asserted against the defendants.
The appeals from the decision and the orders are dismissed, and the judgment is affirmed.
HINDS-RADIX and BARROS, JJ., concur.
ORDERED that the appeal from the decision is dismissed, as no appeal lies from a decision (see Schicchi v J.A. Green Const. Corp., 100 AD2d 509); and it is further,
ORDERED that the appeals from the orders dated September 26, 2017, and July 23, 2018, are dismissed; and it is further,
ORDERED that the judgment is affirmed; and it is further,
ORDERED that one bill of costs is awarded to the defendants Fred J. Yapkowitz and Elaine M. Yapkowitz.
DILLON, J.P., concurs in part and dissents in part, and votes to dismiss the appeals from the decision, and the orders dated September 26, 2017, and July 23, 2018, and to reverse the judgment, on the law, reinstate the complaint insofar as asserted against the defendants Fred J. Yapkowitz and Elaine M. Yapkowitz, grant the plaintiff's motion pursuant to CPLR 4404(b) to set aside the decision, modify the order dated July 23, 2018, accordingly, and remit the matter to the Supreme Court, Rockland County, for the entry of an amended judgment, inter alia, in favor of the plaintiff and against the defendants Fred J. Yapkowitz and Elaine M. Yapkowitz on the complaint, with the following memorandum:
I respectfully depart company from my colleagues as to how the language of RPAPL 1304 should be interpreted where, as here, there are two borrowers living at the residence that is the subject of the mortgage.
The majority accurately sets forth the history of the litigation, the issues presented to the Supreme Court, the judgment appealed from, and the issue of first impression that we address here on appeal. The issue on appeal is merely the latest of many in the field of residential mortgage foreclosure litigation to arrive at our doorstep deserving of Department-wide attention. Indeed, we have had occasion at our Court to address a variety of novel and evolving issues arising from the spate of residential mortgage foreclosure actions, including many specific to the meaning and mechanics of RPAPL 1304.
The current version of RPAPL 1304(1) provides that:
"with regard to a home loan, at least ninety days before a lender, an assignee or a mortgage loan servicer commences legal action against the borrower, or borrowers at the property address and any other address of record, including mortgage foreclosure, such lender, [*6]assignee or mortgage loan servicer shall give notice to the borrower in at least fourteen-point type which shall include the following: [notice description omitted]."
In describing the mailing requirements of the statute, RPAPL 1304(2) provides:
"The notices required by this section shall be sent by such lender, assignee (including purchasing investor) or mortgage loan servicer to the borrower, by registered or certified mail and also by first-class mail to the last known address of the borrower, and to the residence that is the subject of the mortgage. The notices required by this section shall be sent by the lender, assignee or mortgage loan servicer in a separate envelope from any other mailing or notice. Notice is considered given as of the date it is mailed."
RPAPL 1304 provides that upon the default in the payment of a home loan by a natural person using the mortgaged property as a principal dwelling (see id. § 1304[6]), the lender must send to that borrower a statutory default notice at least 90 days before commencing a foreclosure litigation. The contents of the notice, and the size of the typeface for certain required content, are defined in RPAPL 1304(1) with painstaking statutory specificity. The notices required by the statute must be sent by first-class mail and by either registered or certified mail to the last known address of the borrower, and to the residence that is the subject of the mortgage, and is deemed "given" as of the date of mailing rather than the date of receipt (see id. § 1302[2]; U.S. Bank National Association v Kohanov, 141 NYS3d 137; Deutsche Bank Natl. Trust Co. v Crimi, 184 AD3d 707, 710). Strict compliance with RPAPL 1304 is a condition precedent to the commencement of a residential mortgage foreclosure litigation (see U.S. Bank N.A. v Panzer, 189 AD3d 1109; Citibank, N.A. v Conti-Scheurer, 172 AD3d 17, 20; JPMorgan Chase Bank, N.A. v Williams, 170 AD3d 1142, 1143). Our Court has had many occasions to deny summary judgment and trial verdicts to lenders who failed to prove through admissible evidence compliance with each discrete piece of the statute.
As also relevant here, RPAPL 1304(2) provides that "[t]he notices required by this section shall be sent by the lender, assignee, or mortgage loan servicer in a separate envelope from any other mailing or notice." By requiring the lender, assignee, or mortgage loan servicer to send the mortgage default notice by registered or certified mail and also by first-class mail, the Legislature implicitly provided the means for the plaintiff to demonstrate its compliance with the statute (see Citibank, N.A. v Conti-Scheurer, 172 AD3d at 20-21), while doubling the probability that one or both copies of the notice actually will be received by the homeowner.
In Aurora Loan Servs., LLC v Weisblum (85 AD3d 95), a husband and wife were named co-borrowers on a consolidated note, but the lender addressed and sent its RPAPL 1304 notice only to the husband. The lender's compliance with RPAPL 1304 also suffered from the failure of the notice to list housing counselors by name and contact information, and from insufficient proof of the mailings (see Aurora Loan Servs., LLC v Weisblum, 85 AD3d at 106). In any event, our Court held in Weisblum that RPAPL 1304 was not complied with since the wife, who was as much a co-borrower as the husband, was not sent any notice to which she was statutorily entitled (see Aurora Loan Servs., LLC v Weisblum, 85 AD3d at 105-106). Left open by the facts and legal analysis of Weisblum was whether RPAPL 1304 is complied with if an otherwise proper statutory default notice is addressed and mailed jointly to co-borrowers, with the name of each borrower appearing on the envelopes and in the salutation of the mailed notices themselves.
After Weisblum was decided, the state Legislature amended RPAPL 1304(1) in 2016 to pluralize the notice requirement, that such notices be given to the borrower in the singular or to borrowers in the plural (see L 2016, ch 73, § 1, part Q, §§ 6, 7). The statutory amendment brought RPAPL 1304 into better harmony with Weisblum. Significantly, however, the Legislature did not similarly amend RPAPL 1304(2) to pluralize the statutory provision that describes the required mailings where more than one borrower has signed the note. Instead, RPAPL 1304(2) continues to read that insofar as the mailings are concerned, they are to be sent to the "borrower" (singular) at the last known address of the "borrower" (singular), with no language whatsoever that separate and duplicative mailings are statutorily expected where there are co-borrowers.
Trial courts have reached different conclusions on the question left unanswered by Weisblum, with some courts finding joint mailings to co-borrowers to be sufficient (see HSBC Bank USA, N.A. v Schneider, 2020 NY Slip Op. 30182[U] [Sup Ct, Suffolk County] [Hinrichs, J.] [dicta]; HSBC Bank USA, N.A. v Ahmad, 62 Misc 3d 1225[A], 2019 NY Slip Op 50252[U], *5 [Sup Ct Suffolk County] [Quinlan, J.]; Wells Fargo Bank v Frank, Index No. 26871-2013 [Sup Ct, Suffolk County] [Hinrichs, J.]; Hudson City Sav. Bank, FSB v D'Ancona, 2017 NY Slip Op 31917[U] [Sup Ct, Suffolk County] [Heckman, J.]), and other courts finding joint mailings to be insufficient (see HSBC Bank, USA N.A. v Patricola, 62 Misc 3d 1209[A], 2019 NY Slip Op 50076[U], *3 [Sup Ct, Suffolk County] [Quinlan, J.]; Deutsche Bank Natl. Trust Co. v Jiminez, 62 Misc 3d 811, 827-828 [Sup Ct, Suffolk County] [Quinlan, J.]; U.S. Bank Natl. Assn. v Diaz, 2018 NY Slip Op 30436[U] [Sup Ct, Queens County] [Gavrin, J.]). The contrary viewpoints amongst our trial court colleagues underscore that the issue raised here presents no easy or crystal-clear solution. The Yapkowitz case, which is our focus here (Wells Fargo Bank, N.A. v Yapkowitz, 59 Misc 3d 1227[A], 2018 NY Slip Op 50726[U] [Sup Ct, Rockland County]), is the first trial-level action where the issue has reached the Appellate Division. It is an issue that may predictably repeat in future actions before the Supreme Court and on appeal.
In my view, the plaintiff in this instance satisfied the requirements of RPAPL 1304 by mailing the required statutory default notice to both borrowers, the defendants Fred J. Yapkowitz and Elaine M. Yapkowitz (hereinafter together the defendants),with both requisite mailings jointly addressed to each borrower. My opinion is supported by the following collective reasons:
First, the outer envelopes were addressed to Elaine M. Yapkowitz no less so than they were addressed to her husband, Fred J. Yapkowitz. Unlike Weisblum, the certified and regular mailings here expressly named Elaine M. Yapkowitz as an addressee to whom the letters were intended for joint delivery.
Second, the RPAPL 1304 notices contained within the envelopes were likewise expressly addressed to Elaine M. Yapkowitz, no less so than they were addressed to her husband.
Third, the language of RPAPL 1304(1) merely requires lenders to "give" a statutory default notice to the borrower or borrowers. According to the business records which the Supreme Court found admissible, the notices were sent to the proper address in the proper mechanistic manner, to the borrowers by both first-class and certified mail. Thus, notice was "given" to not just one of them, but to both of them, upon the mailings addressed to both spouses as co-borrowers.
Fourth, the records in evidence demonstrate that the RPAPL 1304 notice transmitted by certified mail arrived at its intended address, as it was signed for by "F. Yapkowitz." Thus, while the plaintiff was not required to prove that its mailings actually reached the intended residential address, its proof nevertheless established that in this instance, delivery of the certified mail notice marked to the attention of both co-borrowers was actually accomplished. Any efforts that could have been undertaken by "F. Yapkowitz" in response to the RPAPL 1304 notice, such as contacting housing counselors, would necessarily inure to the benefit of both borrowers.
Fifth, the records in evidence show that the RPAPL 1304 notice was transmitted by first-class mail as well. The law provides that material placed in an official depository of the United States Postal Service is presumed to be delivered in the due course of the mail (see Nassau Ins. Co. v Murray, 46 NY2d 828, 829-830; Assyag v Wells Fargo Bank, N.A., 186 AD3d 1303). There is therefore an evidentiary presumption that the RPAPL 1304 notice sent by first-class mail arrived at its intended residential destination, addressed to the attention of both co-borrowers. After the plaintiff established by its business records the presumptive delivery of its first-class mailing, the defendants never denied receiving the 1304 notice in either the first-class or certified mail forms. Instead, they merely argued a lack of any "recollection" of receiving the notices. Evidentially, therefore, the co-borrowers each failed to rebut the legal presumption that the first-class mailing was received by them at their address (see Flagstar Bank, FSB v Mendoza, 139 AD3d 898, 900; Emigrant Mtge. Co., Inc. v Persad, 117 AD3d 676, 677-678 [mere denial of receipt insufficient to rebut presumption of delivery]; Grogg v South Rd. Assoc., L.P., 74 AD3d 1021, 1022 [same]).
Sixth, and significantly, RPAPL 1304(1) and (2) do not contain any language requiring "separate" parallel notices addressed to each separate co-borrower. The language enacted by the Legislature, which our Court is obligated to apply, merely requires that the lender, assignee, or mortgage loan servicers "shall give such notice to the borrower," or if applicable, to the "borrowers." That requirement was satisfied here when the plaintiff transmitted a certified and a first-class mail envelope addressed to both borrowers, including Elaine M. Yapkowitz, at her proper [*7]address, with an RPAPL 1304 notice inside the envelopes also addressed to both borrowers. Were we to require that co-borrowers each be entitled to separately addressed and parallel envelopes containing separate RPAPL 1304 notices, we would be reading into RPAPL 1304(1) and (2) language that is simply not contained in the statute itself, and which the state Legislature did not place there.
Seventh, the amendment to RPAPL 1304(1) that was enacted in 2016 to require that the statutory default notice be given to the "borrower" or, by amendment, the "borrowers" (see L 2016, ch 73, § 1, part Q, §§ 6, 7), does not lead to a contrary result, regardless of how the amendatory language is interpreted. The RPAPL 1304 notice in this instance was dated December 12, 2012, and the action was commenced by the plaintiff on June 20, 2013, well before the 2016 amendment to the statute became law. Section 11 of the act amending RPAPL 1304(1) specifically provides that the "act shall take effect on the one hundred eightieth day after it shall have become law" (see L 2016, ch 73, § 1, part Q, § 11), the purpose of which, at least inferentially, was to allow lenders the time and opportunity to update their statutory default procedures to assure that going forward, all borrowers in a multi-borrower matter be included by name on the notices. Even this does not require separate mailings to each co-borrower, so long as all co-borrowers are included in the notice procedures from that time forward. In any event, it is a fundamental canon of statutory construction that the retroactive operation of statutes is not favored by courts, and statutes will not be given such construction unless the language expressly or by necessary implication requires it (see Majewski v Broadalbin-Perth Cent. School Dist., 91 NY2d 577, 584; Jacobus v Colgate, 217 NY 235, 240 [Cardozo, J.]). Here, the statutory amendment was not made retroactive, as it expressly did not become effective until 180 days after its enactment. The amendment, therefore, is irrelevant to this Court's determination of the specific matter before us, as the plaintiff could not be expected, in 2012 when the default notices were mailed, or in 2013 when this action was commenced, to anticipate what amendments might be added to the statute in future years relative to the particulars of this condition precedent. The plaintiff could only rely upon the language of the statute as it existed at those times, and without benefit of any future judicial decisional perspective. We err if we apply in this particular case the statutory language which, while not requiring separately enveloped mailings to co-borrowers, was nevertheless not added to the RPAPL until 2016.
Eighth, the related subdivisions of RPAPL 1304(1) and (2) must be read together to help determine the scheme of the entire section (see McKinney's Cons Laws of NY, Book 1, Statutes § 97, Comment at 213-214, 216; People v Odum, 31 NY3d 344, 351; Archer v Beach Car Serv., Inc., 180 AD3d 857, 860). While the Legislature directed in the 2016 amendment of subdivision (1) that notice be given to "borrowers," in the plural, it retained the language in subdivision (2) that the mailings be by first-class and certified or registered mail to the "borrower," in the singular. The two statutory subdivisions, as amended and read together, suggest that a single notice to both borrowers collectively satisfies the notice and mailing requirements of subdivisions (1) and (2).
Ninth, RPAPL 1304 is a statute steeped in minutiae, detail, and legislative micro-management. The high level of detail is motivated by the well-intentioned public policy of advising homeowners in default of the risks and remedies they face in failing to renegotiate or cure their defaults in payment. Perhaps the most prominent example of the Legislature's micro-management of the subject is the requirement that certain language of the notice be in 14-point typeface rather than the more typical 12-point typeface, and the template language of the overall notice with seven paragraphs of information that is required to be disclosed. The Legislature has provided painstaking detail in describing the requirements of RPAPL 1304—namely, that the notices: advise that the homeowner is at risk of losing the home; provide a list of housing counselors with specific contact information; invite negotiation with the lender to potentially resolve issues of default; advise the homeowner of the right to remain in the home until a court order is received directing otherwise; and advise the homeowner of the length and amount of the default that needs to be cured. RPAPL 1304 has been amended many times and in several different respects since 2008, further underscoring the Legislature's attention to the form and substance of statutory residential mortgage default notices. Under the long-standing and well-understood maxim of expressio unius est exclusio alterius, where a statute expressly describes a particular act, thing, or person to which it applies, an irrefutable inference must be drawn that what is omitted or not included in a statute was intended to be omitted or excluded (see McKinney's Cons Laws of NY, Book 1, Statutes § 240; Pajak v Pajak, 56 NY2d 394, 397; Matter of Brown v New York State Racing & Wagering Bd., 60 AD3d 107, 116-117). [*8]Here, despite the details, amendments, and attention RPAPL 1304 has received for more than a decade from attentive and well-meaning legislators, the Legislature has not placed actual language into the statute, at any time, advising lenders, assignees, and mortgage loan servicers that if a note and mortgage are executed by co-borrowers, each co-borrower is entitled to a duplicative, separately enveloped, separately mailed, and separately saluted notice.
Finally, the majority expresses concerns that without parallel mailings separately addressed to co-borrowers, there is no guarantee that mail received by one borrower will be conveyed to the other. The majority's concern is not only wholly speculative but also begs the issue, as the outer envelopes are addressed and delivered to both addressees. The lender's obligation only goes so far as sending the required mailing to the proper address (see Citibank v Conti-Scheurer, 172 AD3d at 24) using two different mailing methods to double the odds that at least one mailing, if not both, will reach the intended destination. Lenders satisfy or fail to satisfy their obligations under RPAPL 1304 at the time the required notices are placed into the mail, when the proverbial "mailbox rule" triggers, with no control over what happens to the notices beyond the legal presumption of their subsequent delivery in the regular course of the mail. The statute does not contain any requirement that the lender prove actual physical "receipt" of the notices by any intended recipient, including in this instance Elaine M. Yapkowitz's receipt of the certified-mail copy that was apparently signed for at the residence by her co-borrower husband. Receipt is not guaranteed even if separate, parallel mailings were required and used, as it is not known from household to household whether any person collecting the daily mail will pass it along to specific addressees within the same household, regardless of how many envelopes are transmitted or addressed. Moreover, the lender is not a statutory guarantor that any envelope mailed to and received at the proper destination is actually opened by the intended recipient rather than placed in a file, round or otherwise. Here, the fact that "F. Yapkowitz" signed for the certified mailing addressed to both spouses evidences the plaintiff's successful fulfillment of its statutory obligation to give the required default notice to both Elaine M. Yapkowitz and her husband at their proper address. Any circumstances beyond the posting of the letters, regardless of who claimed the mailings at the designated address, are beyond the plaintiff's control, which is true even if separately addressed envelopes were to be used.
The plaintiff therefore established, in my view, its compliance with RPAPL 1304 and its entitlement to judgment in its favor at the conclusion of the trial. In opposition, the defendants did not deny receipt of the RPAPL 1304 notices, but only claimed that they each had no recollection of their receipt. The defendants failed to refute the delivery of the RPAPL 1304 notice that was signed for by F. Yapkowitz, and neither defendant rebutted the presumptive delivery of the RPAPL 1304 notice that had been sent to them by regular mail as well (see Engel v Lichterman, 62 NY2d 943, 944; Nassau Ins. Co. v Murray, 46 NY2d at 829-830; Assyag v Wells Fargo Bank, N.A., 186 AD3d at 1303; Citibank, N.A. v Conti-Scheurer, 172 AD3d at 22-23).
For the foregoing reasons individually and collectively, RPAPL 1304 should not be construed, in its current or former form, to require separate, duplicative, mailings of notices to co-borrowers residing in the same household where, as here, the statute is satisfied by joint regular and certified mailings to both. A "strict construction" of a statute does not mean a "constrained construction" of the statute. Our state Legislature is free to further amend RPAPL 1304 to express such a requirement if it wishes, but so far it has deigned not to do so. It is not our place, as jurists, to write such language into the law ourselves. Accordingly, I respectfully vote to reverse the judgment appealed from.
ENTER:
Maria T. Fasulo
Acting Clerk of the Court