U.S. Bank N.A. v Romano (2024 NY Slip Op 05235)

U.S. Bank N.A. v Romano

2024 NY Slip Op 05235

Decided on October 23, 2024

Appellate Division, Second Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided on October 23, 2024
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

ANGELA G. IANNACCI, J.P.
PAUL WOOTEN
WILLIAM G. FORD
JANICE A. TAYLOR, JJ.

2020-08939
2020-08940
 (Index No. 619692/17)

[*1]U.S. Bank National Association, etc., respondent,
v
Pasquale Romano, appellant, et al., defendants.

Ronald D. Weiss, P.C., Melville, NY (Melissa Montenes of counsel), for appellant.
McCalla Raymer Leibert Pierce, LLC, New York, NY (Jane H. Torcia and Harold Kofman of counsel), for respondent.

DECISION & ORDER
In an action to foreclose a mortgage, the defendant Pasquale Romano appeals from two orders of the Supreme Court, Suffolk County (Thomas F. Whelan, J.), both dated October 26, 2020. The first order, insofar as appealed from, granted those branches of the plaintiff's motion which were for summary judgment on the complaint insofar as asserted against the defendant Pasquale Romano, to strike so much of the answer of the defendants Pasquale Romano and Andrea Romano as was asserted on behalf of the defendant Pasquale Romano, and for an order of reference. The second order, insofar as appealed from, granted the same relief to the plaintiff and referred the matter to a referee to compute the amount due to the plaintiff.
ORDERED that the orders are affirmed insofar as appealed from, with one bill of costs.
In October 2017, the plaintiff commenced this action against the defendant Pasquale Romano (hereinafter the defendant), among others, to foreclose a mortgage on certain residential property located in Huntington. The defendant and another defendant interposed an answer asserting, as affirmative defenses, that the plaintiff lacked standing and failed to comply with RPAPL 1304. Thereafter, the plaintiff moved, inter alia, for summary judgment on the complaint insofar as asserted against the defendant, to strike so much of the answer as was asserted on behalf of the defendant, and for an order of reference. In an order dated October 26, 2020, the Supreme Court, among other things, granted those branches of the plaintiff's motion. In a second order dated October 26, 2020, the court, inter alia, granted the same relief to the plaintiff and referred the matter to a referee to compute the amount due to the plaintiff. The defendant appeals from both orders.
"[W]here, as here, the plaintiff's standing has been placed in issue by a defendant, the plaintiff must prove its standing as a part of its prima facie showing on a motion for summary judgment" (HSBC Bank USA, N.A. v Sene, 219 AD3d 1499, 1500; see HSBC Bank USA, N.A. v Boursiquot, 204 AD3d 980, 981). "The plaintiff meets this burden with proof of either a written assignment of the underlying note or the physical delivery of the note endorsed in blank or specially to it prior to the commencement of the foreclosure action" (HSBC Bank USA, N.A. v Boursiquot, 204 AD3d at 982; see HSBC Bank USA, N.A. v Sene, 219 AD3d at 1501).
Here, the plaintiff established, prima facie, that it had standing to commence this action by demonstrating that it had physical possession of the note prior to the commencement of the action, as evidenced by its attachment of the note, endorsed in blank, to the summons and complaint (see Bank of N.Y. Mellon v Pigott, 200 AD3d 633; U.S. Bank N.A. v Rowe, 194 AD3d 978, 980; JPMorgan Chase Bank, N.A. v Escobar, 177 AD3d 721, 722).
In opposition to that prima facie showing, the defendant failed to raise a triable issue of fact. The defendant's objections to the affidavit of the plaintiff's loan servicer are unavailing, as this submission was not required under the circumstances to establish the plaintiff's standing (see JPMorgan Chase Bank, N.A. v Escobar, 177 AD3d at 723). Furthermore, the defendant's challenges to the validity of the assignment of mortgage are "irrelevant to the issue of the plaintiff's standing to foreclose, as the mortgage is not the dispositive document of title" (JPMorgan Chase Bank, N.A. v Esparza, 213 AD3d 655, 657; see Aurora Loan Servs., LLC v Taylor, 25 NY3d 355, 362).
The plaintiff further established, prima facie, its strict compliance with RPAPL 1304 (see Bank of N.Y. Mellon v Pigott, 200 AD3d 633). A plaintiff demonstrates compliance with RPAPL 1304 "through evidence of actual mailing (e.g., an affidavit of mailing or service) or . . . by proof of a sender's routine business practice with respect to the creation, addressing, and mailing of documents of that nature" (CIT Bank N.A. v Schiffman, 36 NY3d 550, 556 [emphasis added; citation omitted]; see U.S. Bank N.A. v Pickering-Robinson, 197 AD3d 757, 759; Citibank, N.A. v Conti-Scheurer, 172 AD3d 17, 21). In other words, there are two methods by which a plaintiff can demonstrate the requisite mailings. A plaintiff can submit "evidence of actual mailing" (CIT Bank N.A. v Schiffman, 36 NY3d at 556; see U.S. Bank N.A. v Pickering-Robinson, 197 AD3d at 759; Citibank, N.A. v Conti-Scheurer, 172 AD3d at 21). Alternatively, a plaintiff may supply "proof of a standard office mailing procedure designed to ensure that items are properly addressed and mailed, sworn to by someone with personal knowledge of the procedure" (Citibank, N.A. v Conti-Scheurer, 172 AD3d at 21 [internal quotation marks omitted]; see CIT Bank N.A. v Schiffman, 36 NY3d at 556; Nassau Ins. Co. v Murray, 46 NY2d 828, 829; Nocella v Fort Dearborn Life Ins. Co. of N.Y., 99 AD3d 877, 878). This latter evidence allows for an inference, indeed, gives rise to "a rebuttable 'presumption,'" that "'such a notification was mailed to and received by the [intended recipient]'" (CIT Bank N.A. v Schiffman, 36 NY3d at 556, quoting Preferred Mut. Ins. Co. v Donnelly, 22 NY3d 1169, 1170).
Here, the plaintiff submitted a copy of the 90-day notices and envelopes sent to the defendant, containing United States Postal Service (hereinafter USPS) certified and first-class mail tracking numbers, as well as a transaction report from Walz Group, Inc. (hereinafter Walz Group), the company that performed the mailings. The transaction report listed the certified and first-class mailings that were made, including certified and first-class tracking numbers matching those appearing on the notices, the date of mailing, the postage fees paid, and the reported USPS status. As to the certified mailings, the transaction report evinced the delivery of the mailings to an individual in Huntington.
The transaction report was admissible inasmuch as an employee of the plaintiff's servicer averred that it was incorporated into the servicer's business records and routinely relied upon by the servicer in its business (see U.S. Bank N.A. v Maher, 219 AD3d 1372, 1374-1375; Bank of N.Y. Mellon v Gordon, 171 AD3d 197, 209-210). This admissible evidence served as prima facie proof of the actual mailing of the RPAPL 1304 notices (see U.S. Bank N.A. v Pickering-Robinson, 197 AD3d at 759; Wells Fargo Bank, N.A. v Benitez, 194 AD3d 986, 987). Notably, in proving the actual mailing, the plaintiff was not required to rely on documents generated by the USPS (see U.S. Bank N.A. v Adams, 202 AD3d 867, 869). "There is no requirement that a plaintiff in a foreclosure action rely on any particular set of business records to establish a prima facie case, so long as the plaintiff satisfies the admissibility requirements of CPLR 4518(a), and the records themselves actually evince the facts for which they are relied upon" (U.S. Bank N.A. v Pickering-Robinson, 197 AD3d at 759 [internal quotation marks omitted]; see Bank of N.Y. Mellon v Gordon, 171 AD3d at 207). Moreover, as explained above, since the plaintiff submitted prima facie proof of the actual mailing of the RPAPL 1304 notices, rather than seeking to prove mailing through an inference [*2]derived from routine business practices, the plaintiff was not required to submit proof of Walz Group's standard office mailing procedures, sworn to by someone with personal knowledge of those procedures.
We further find unpersuasive the assertion by our dissenting colleague that this Court's decision in Wells Fargo Bank, N.A. v Benitez (194 AD3d at 987) is distinguishable. In our view, that case is directly on point. The plaintiff in Benitez submitted an affidavit from its employee, a vice president of loan documentation. The employee "indicated that the 90-day notices were mailed by . . . Walz Group" and explained that "the plaintiff used the Walz Group system to 'process, send, and track' the 90-day notices" (id.). The plaintiff also submitted the Walz Group's transaction report, which was incorporated into the plaintiff's own records and relied upon in its business (see id.). Contrary to the conclusion of our dissenting colleague, the transaction report at issue here is substantially similar to the transaction report accepted in Benitez. Further, while our dissenting colleague is correct that there was additional evidence of the certified mailings in Benitez, there was no additional evidence of the first-class mailings in that case, and this Court nevertheless concluded that the evidence was sufficient to prove both mailings. There is no reason to conclude that the transaction report here is sufficient to prove the first-class mailings, as it was in Benitez, but not the certified mailings. As noted above, no particular type of business records is required to prove that fact (see U.S. Bank N.A. v Adams, 202 AD3d at 869).
Finally, while our dissenting colleague states that in the affidavit submitted by the plaintiff in Benitez, the plaintiff's employee "described [Walz Group's] process for verifying that notices were actually mailed," we disagree with that characterization, as the employee merely indicated: "As part of [the plaintiff's] regular practice in sending such notices via the WALZ TrackRight system, a copy of the mailbook for each mailing is entered and stored as proof of mailing." Moreover, the employee in Benitez did not attest to any personal knowledge of Walz Group's "process," and thus, any averments as to Walz Group's "process" would not have held evidentiary value. In any event, as noted above, evidence of standard office mailing procedures was not necessary since the plaintiff submitted proof of actual mailing.
In sum, we conclude that Benitez is not materially distinguishable and, thus, conclude, as we did in Benitez, that the plaintiff met its prima facie burden of demonstrating its compliance with RPAPL 1304.
In opposition to this prima facie showing, the defendant failed to raise a triable issue of fact (see Deutsche Bank Natl. Trust Co. v Mangi, 222 AD3d 942, 945).
The defendant's contentions regarding the limited power of attorney submitted by the plaintiff in support of its motion, raised for the first time on appeal, are not properly before this Court. We disagree with the conclusion of our dissenting colleague that this is an issue appropriately addressed for the first time on appeal. The question of whether the plaintiff's servicer was authorized to act on its behalf during the relevant time period is dependent upon facts and potentially could have been avoided if raised at the proper juncture (see Newburgh Commercial Dev. Corp. v Cappelletti, 216 AD3d 975, 977; see also U.S. Bank Trust, N.A. v Chiramannil, 205 AD3d 966, 968). For example, if a clerical error resulted in the attachment as an exhibit of a power of attorney covering the incorrect time period, such an omission could have been corrected in reply (see A.B. v Waring, 219 AD3d 1291, 1293). However, we do not know and could only speculate as to the facts surrounding the limited power of attorney submitted as an exhibit because this argument was not raised by the defendant in the Supreme Court, and it would not be appropriate for the plaintiff to submit new facts to this Court in its appellate brief or at oral argument.
The defendant's remaining contentions are without merit.
Accordingly, the Supreme Court properly granted those branches of the plaintiff's motion which were for summary judgment on the complaint insofar as asserted against the defendant, to strike so much of the answer as was asserted on behalf of the defendant, and for an order of reference.
IANNACCI, J.P., FORD and TAYLOR, JJ., concur.
WOOTEN, J., dissents, and votes to reverse the orders insofar as appealed from, on the law, and to deny those branches of the plaintiff's motion which were for summary judgment on the complaint insofar as asserted against the defendant Pasquale Romano, to strike so much of the answer of the defendants Pasquale Romano and Andrea Romano as was asserted on behalf of the defendant Pasquale Romano, and for an order of reference, with the following memorandum:
I respectfully disagree with the determination of my colleagues in the majority that the plaintiff established, prima facie, its strict compliance with RPAPL 1304.
"RPAPL 1304 requires that, at least 90 days before a lender, an assignee, or a mortgage loan servicer commences an action to foreclose the mortgage on a home loan as defined in the statute, such lender, assignee, or mortgage loan servicer give notice to the borrower. The statute provides the required content for the notice and provides that the notice must be sent by registered or certified mail and also by first-class mail to the last known address of the borrower" (Federal Natl. Mtge. Assn. v Young, 207 AD3d 442, 443; see RPAPL 1304[1], [2]). "'Since RPAPL 1304 notice must be sent at least 90 days prior to the commencement of an anticipated foreclosure action, its manifest purpose is to aid the homeowner in an attempt to avoid litigation'" (Wells Fargo Bank, N.A. v Yapkowitz, 199 AD3d 126, 131, quoting Aurora Loan Servs., LLC v Weisblum, 85 AD3d 95, 107). "'By requiring the lender or mortgage loan servicer to send the RPAPL 1304 notice by registered or certified mail and also by first-class mail, the Legislature implicitly provided the means for the plaintiff to demonstrate its compliance with the statute, i.e., by proof of the requisite mailing, which can be established with proof of the actual mailings, such as affidavits of mailing or domestic return receipts with attendant signatures, or proof of a standard office mailing procedure designed to ensure that items are properly addressed and mailed, sworn to by someone with personal knowledge of the procedure'" (Bank of N.Y. Mellon v Porfert, 187 AD3d 1110, 1112, quoting Citibank, N.A. v Conti-Scheurer, 172 AD3d 17, 20-21).
Initially, the plaintiff failed to establish, prima facie, that RPAPL 1304 notices were sent by the "lender, assignee or mortgage loan servicer" as required by the statute (id. § 1304[1]). The RPAPL 1304 notices allegedly were mailed on May 24, 2017, by Walz Group, Inc. (hereinafter Walz), on behalf of Nationstar Mortgage, LLC (hereinafter Nationstar), the plaintiff's loan servicer. However, the limited power of attorney authorizing Nationstar to act on behalf of the plaintiff, which was submitted by the plaintiff in support of its motion, was not executed until June 21, 2019, more than two years after the alleged mailing of the RPAPL 1304 notices. Moreover, in an affidavit submitted by the plaintiff from Alan Blunt, a senior principal of Nationstar, he averred that Nationstar's authority to act on behalf of the plaintiff was premised on the attached limited power of attorney dated June 21, 2019, and Blunt did not reference any other document authorizing Nationstar to act on behalf of the plaintiff prior to that date. Thus, the plaintiff failed to establish, prima facie, that Nationstar was authorized to act on behalf of the plaintiff as of the date of the alleged mailing of the RPAPL 1304 notices, as required to establish the plaintiff's strict compliance with the statute (see Deutsche Bank Natl. Trust Co. v Pariser, 207 AD3d 518, 522).
My colleagues in the majority correctly note that the contention raised by the defendant Pasquale Romano (hereinafter the defendant) regarding the date of the limited power of attorney is raised for the first time on appeal. Nevertheless, this issue is reviewable because it involves a question of law that appears on the face of the record and could not have been avoided if brought to the Supreme Court's attention at the proper juncture (see U.S. Bank N.A. v Reddy, 220 AD3d 967, 971-972). Here, as expected of a party seeking summary judgment, the plaintiff laid bare its proof in its motion papers (see Caliber Home Loans, Inc. v Weinstein, 197 AD3d 1232, 1237), including the limited power of attorney dated June 21, 2019, and Blunt's affidavit, in which he indicated that Nationstar's authority to act on behalf of the plaintiff was derived specifically from that limited power of attorney. Thus, the issue of whether the plaintiff's proof was sufficient to establish, prima facie, Nationstar's authority to act on its behalf presents a question of law appearing on the face of the record.
My colleagues in the majority argue that the plaintiff might have asserted in reply papers that it submitted a power of attorney covering the incorrect time period due to a clerical error and attached a power of attorney for the proper time period. Notably, however, in response to the defendant's appellate brief highlighting the deficiency as to the date of the limited power of attorney, the plaintiff raises no assertion that the limited power of attorney attached to its motion papers was submitted in error, nor did the plaintiff's attorney suggest at oral argument that there was any such error. Thus, there is no basis to speculate whether Blunt might have intended to attach a hypothetical power of attorney other than the limited power of attorney he specifically relied upon in his affidavit.
In any event, even aside from the plaintiff's failure to submit evidence showing Nationstar's power to act on the plaintiff's behalf as of the date of the alleged mailing of the RPAPL 1304 notices, the plaintiff failed to establish that the notices were actually mailed by registered or certified mail and by first-class mail to the defendant's last known address. Blunt averred in his affidavit that the RPAPL 1304 notices "were mailed to [the defendant] pursuant to an established and routinely followed business process at Nationstar designed to ensure that documents are properly addressed and mailed," that "[he is] familiar with Nationstar's standard practices and procedures used to create, mail and store data regarding the 90-Day Notice . . . that are designed to ensure that these letters are properly addressed [and] mailed," and that "[u]nder these practices, each 90-Day Notice listed in the upper left hand corner the name of the recipient and the recipient's address, and listed in the subject line the Mortgage Loan number" (emphasis added). However, as Blunt acknowledged, the RPAPL 1304 notices were not mailed by Nationstar. Moreover, Blunt did not aver that he was familiar with the mailing practices and procedures of Walz, the third-party entity that allegedly mailed the RPAPL 1304 notices. Thus, Blunt did not establish proof of a standard office mailing procedure designed to ensure that the notices were properly addressed and mailed (see Caliber Home Loans, Inc. v Weinstein, 197 AD3d at 1237; Bank of N.Y. Mellon v Porfert, 187 AD3d at 1113).
I note that my dissent does not take the position that the plaintiff was required to establish proof of a standard office mailing procedure designed to ensure that the notices were properly addressed and mailed in the event the plaintiff submitted proof of actual mailing of the RPAPL 1304 notices. However, for reasons discussed hereinafter, I disagree with my colleagues in the majority that the plaintiff submitted proof of actual mailing of the RPAPL 1304 notices.
Contrary to the majority decision, I conclude that the plaintiff's submission of a TrackRight transaction report created by Walz, without more, was not sufficient to establish actual mailing of the RPAPL 1304 notices. Although Blunt averred that the transaction report was incorporated by reference into Nationstar's business records and relied upon as part of Nationstar's business practices, Blunt failed to indicate how or when the report was created, that it was created by Walz in the regular course of business, or that it was the regular course of Walz's business to create a transaction report at or around the time of mailing of the notices (see Bank of N.Y. Mellon v Porfert, 187 AD3d at 1113). Thus, the plaintiff's mere submission of a screenshot of the report, without more, failed to establish that the mailings actually occurred (see Caliber Home Loans, Inc. v Squaw, 190 AD3d 926, 927-928). To hold otherwise would enable a plaintiff to establish its compliance with RPAPL 1304 by submitting virtually any document generated by a third-party entity on an unknown date claiming the notices were mailed, without any information as to the circumstances under which the document was created.
I respectfully submit that Wells Fargo Bank, N.A. v Benitez (194 AD3d 986), which is relied upon by my colleagues in the majority, is distinguishable for several reasons. First, in contrast to the circumstances of the case at bar, the plaintiff in Benitez submitted an affidavit from its vice president of loan documentation, who described Walz's process for verifying that notices were actually mailed, including the creation of a mailbook for each mailing, which was "entered and stored as proof of mailing" (emphasis added). Notably, the affiant in Benitez submitted copies of the mailbook entries for the first-class and certified mailing of the RPAPL 1304 notices and a transaction report documenting the precise date and time of creation of the mailbook entries. By contrast, in the case at bar, Blunt did not describe the creation of a mailbook or other document created at or near the time of mailing to verify that the mailing actually took place, and the [*3]transaction report did not reference the creation of a mailbook entry, let alone indicate the date and time such a document was created. Moreover, the plaintiff in Benitez submitted a TrackRight transaction report containing more details than the report in the case at bar, including the precise times of printing, processing at a United States Postal Service (hereinafter USPS) facility, and delivery of the RPAPL 1304 notice. In addition, the affiant in Benitez attested that it was the plaintiff's regular practice to retain on file a copy of all certified mail delivery receipts returned to the plaintiff for notices sent via certified mail, and the plaintiff submitted a signed certified mail receipt for the RPAPL 1304 notice, whereas the plaintiff in the case at bar did not submit a certified mail receipt or any USPS documentation showing that the purported mailings actually occurred (see Caliber Home Loans, Inc. v Weinstein, 197 AD3d at 1236). Based on all of these circumstances, of which this Court may take judicial notice (see Matter of Newton v McFarlane, 174 AD3d 67, 77; Caffrey v North Arrow Abstract & Settlement Servs., Inc., 160 AD3d 121, 126), I conclude that Benitez is not determinative of this appeal.
Likewise, I submit that U.S. Bank N.A. v Pickering-Robinson (197 AD3d 757), which is also relied on by my colleagues in the majority, is distinguishable. In that case, this Court determined that the plaintiff established, prima facie, that the RPAPL 1304 notices were sent to the defendant in accordance with the statute by submitting an affidavit from an officer of the plaintiff and an accompanying record created by the plaintiff documenting the mailing of the notices by certified and first-class mail (see U.S. Bank N.A. v Pickering-Robinson, 197 AD3d at 760). However, the document referenced by the affiant in that case was created by the plaintiff, and thus, the affiant had personal knowledge of how those records were created. Moreover, the affiant specifically averred that the document was "produced only when the RPAPL Notice is sent by both methods required by RPAPL 1304" (id. at 761 [internal quotation marks omitted]). By contrast, in the case at bar, Blunt was not an employee of the entity that created the document relied upon, and he did not indicate whether the transaction report was generated at the time of the mailing of the RPAPL 1304 notices or shortly thereafter.
Consequently, I submit that the plaintiff's submissions, including Blunt's affidavit, were insufficient to establish, prima facie, its strict compliance with RPAPL 1304, and thus, the plaintiff was not entitled to summary judgment on the complaint insofar as asserted against the defendant, irrespective of the sufficiency of the defendant's opposition papers (see Winegrad v New York Univ. Med. Ctr., 64 NY2d 851, 853). Accordingly, I vote to reverse the orders insofar as appealed from and to deny those branches of the plaintiff's motion which were for summary judgment on the complaint insofar as asserted against the defendant, to strike so much of the answer of the defendant and another defendant as was asserted on behalf of the defendant, and for an order of reference.
ENTER:
Darrell M. Joseph
Clerk of the Court